# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

THE YORK GROUP, INC., MILSO    )
INDUSTRIES CORPORATION, and    )
MATTHEWS INTERNATIONAL    )
CORPORATION,    )
    )
    Plaintiffs,    )
    )
    v.    )    **Civil Action No. 10-1078**
    )
SCOTT PONTONE, HARRY    )
PONTONE, BATESVILLE CASKET    )
COMPANY, INC., and PONTONE    )
CASKET COMPANY, LLC,    )
    )
    Defendants.    )

## OPINION

Conti, Chief District Judge

## I.    Introduction

Pending before the court in this diversity action are two motions to transfer venue. One motion was filed by defendant Batesville Casket Company, Inc. ("Batesville"), and the second motion was filed by defendants Scott Pontone, Harry Pontone, and Pontone Casket Company, LLC ("Pontone Casket" and collectively with Scott Pontone and Harry Pontone, the "Pontone defendants"). (ECF Nos. 651, 654.) Batesville and the Pontone defendants argue that consideration in this case of the private and public factors articulated by the Third Circuit Court of Appeals in Jumara v. State Farm Insurance Co., 55 F.3d 873 (3d Cir. 1995), mandates the transfer of this case to United States District Court for either the Southern or Eastern District of New York. (ECF Nos. 652, 657.) Plaintiffs The York Group, Inc. ("York Group"), Milso Industries Corporation ("Milso"), and Matthews International Corporation ("Matthews" and collectively with York Group and Milso, "plaintiffs") oppose the motions to transfer arguing,

among other things, that Scott Pontone and Harry Pontone are barred from objecting to venue in this district and consideration of the private and public factors set forth in <u>Jumara</u> does not support a transfer of this case. (ECF No. 671 at 3.)

Based upon the court's review of the parties' submissions and the applicable legal principles, Batesville's and the Pontone defendants' motions to transfer will be denied for the reasons set forth herein.

## II.     Procedural History[1]

In this case initiated by plaintiffs on August 16, 2010, the court has overseen a contentious and lengthy fact discovery period and, on March 6, 2014, decided the parties' voluminous cross-motions for summary judgment. (ECF Nos. 642, 643.) The parties are presently engaged in expert discovery (ECF No. 662), and the above-captioned case is currently scheduled for trial on December 1, 2014 (ECF No. 663).

On April 15, 2014, three years and eight months after the initiation of this case, Batesville filed a motion to transfer, brief in support of the motion, and a motion for a hearing with respect to the motion to transfer. (ECF Nos. 651, 652, 653.) On the same day, the Pontone defendants filed a motion to transfer, brief in support of the motion, and declaration with several attachments in support of the motion to transfer. (ECF Nos. 654, 656, 657.)

On May 6, 2014, plaintiffs filed an omnibus response to the motions to transfer filed by Batesville and the Pontone defendants. (ECF No. 671.) On June 1, 2014, the Pontone defendants with leave of court filed a reply brief and several attachments in support of their motion to transfer. (ECF No. 684.) On June 2, 2014, Batesville with leave of court filed a reply brief in

---

[1] The procedural history section of this opinion sets forth only the procedural history relevant to the disposition of the motions to transfer.

support of its motion to transfer. (ECF No. 686.) Batesville in its reply brief incorporates by reference the arguments and submissions made by the Pontone defendants with respect to their motion to transfer. (Id. at 1.)

On June 13, 2014, plaintiffs with leave of court filed a sur-reply brief in support of their opposition to the motions to transfer. (ECF No. 691.) On June 14, 2014, the Pontone defendants filed a supplement with respect to their motion to transfer. (ECF No. 692.)

Batesville's and the Pontone defendants' motions to transfer having been fully brief are now ripe to be decided by the court.

### III.    Discussion[2]

---

[2]    In footnote seven of the Pontone defendants' reply in support of their motion to transfer, they request the undersigned district court judge *sua sponte* recuse herself from presiding over this case. (ECF No. 684 at 11 n.7.) The Pontone defendants argue "the Court's record in this case, at a minimum, creates the possible appearance of bias." (Id.)

The statute governing judicial disqualification, 28 U.S.C. § 455 provides, in pertinent part: "(a) Any justice, judge, or magistrate judge of the United States shall disqualify [herself] in any proceeding in which [her] impartiality might reasonably be questioned." 28 U.S.C. § 455(a). The test for disqualification pursuant to § 455(a) is "whether a reasonable person, with knowledge of all the facts, would conclude that the judge's impartiality might reasonably be questioned." In re Kensington Int'l Ltd., 353 F.3d 211, 220 (3d Cir. 2003). "It is 'vital to the integrity of the system of justice that a judge not recuse [herself] on unsupported, irrational or highly tenuous speculation.'" Pondexter v. Allegheny Cnty. Housing Auth., Civ. No. 11-857, 2012 WL 1621370, at *2 (W.D. Pa. May 9, 2012) (quoting McCann v. Commc'ns Design Corp., 775 F. Supp. 1506, 1523 (D. Conn. 1991) (alteration in original)). A court's "rulings alone almost never constitute a valid basis for a bias or partiality motion." Liteky v. United States, 510 U.S. 540, 555 (1994).

The allegations made by the Pontone defendants in their reply brief fail to meet the reasonable person standard articulated in In re Kensington. The Pontone defendants accuse the undersigned district court judge of applying "different and more burdensome standards to requests for relief made by the Pontone Defendants, than the standards it has applied when considering similar requests for relief made by Plaintiffs." (ECF No. 684 at 10 n.7.) Each of the Pontone defendants' specific allegations with respect to their request for the undersigned district judge to *sua sponte* recuse herself will be addressed below.

The Pontone defendants argue: "[T]his Court has promptly granted or acted on Plaintiffs' emergency motions, immediately after the requests were made and without requiring or receiving any showing of extreme emergency of the type required by the Court in respect of the Pontone Defendants' request to expedite." (ECF No. 684 at 10 n.7.) The Pontone defendants'

accusations focus on this court denying their "emergency" request to decide the motion to transfer prior to scheduling this matter for trial. The Pontone defendants, however, disregard the number of emergency motions they filed to which the court responded in an expeditious manner. See e.g., (ECF No. 56) (filed on 1/5/11 and granted by this court on 1/11/11); (ECF No. 205) (filed on 2/22/2012 and granted on 2/24/12); (ECF No. 309) (filed on 8/20/12 and granted in part on 8/22/12); (ECF No. 342) (filed on 10/23/12 and granted on 11/1/12); (ECF No. 344) (filed on 10/24/12, conditionally granted on 10/29/12, ultimately denied as moot on 11/1/12); and (ECF No. 383) (filed on 11/29/12 and addressed at a hearing on 12/5/12, at which the Pontone defendants withdrew the motion). In the Pontone defendants' most recent "emergency" motion they sought an emergency stay of the pretrial case management order arguing the court must—on an expedited basis—decide their pending motion to transfer prior to scheduling trial in this case. (ECF Nos. 658, 659.) The court in an opinion and order dated May 2, 2014, denied the Pontone defendants' "emergency" motion explaining:

> The scheduling of a date for trial in this matter, after nearly four years of contentious litigation and a request by the plaintiffs, does not create an unexpected or dangerous situation calling for immediate action by the court; indeed, trial is seven months away and the court will decide the motion to transfer in due course prior to ruling on any Daubert issues, motions in limine, or trial-related issues.

(ECF No. 669 at 2.) The Pontone defendants' complaint about the court denying their most recent "emergency" motion appears to be more of a complaint about the court denying the motion and does not show "a reasonable person, with knowledge of all the facts, would conclude that the judge's impartiality might reasonably be questioned." In re Kensington, 353 F.3d at 220.

The Pontone defendants next argue the court's impartiality is demonstrated by this court applying "similarly disparate approaches in respect of the parties' respective requests to amend the pleadings." (ECF No. 684 at 10.) This court discussed this accusation in its opinion dated March 6, 2014, addressing the parties' motions for summary judgment and the Pontone defendants' motion for leave to file amended counterclaims. (ECF No. 642 at 78-80.) As the court noted in its opinion:

> A careful review of the documentary record reveals that Matthews, the York Group and Milso were only given twenty days to file their amended complaint without seeking leave to amend. ECF No. 59 at 45. Leave was orally granted because the substance of the forthcoming allegations had already been discussed at a hearing concerning a pending motion to dismiss. Id. at 42-43. Each party seeking leave to amend has been required to provide some explanation about what its amended pleading would allege. Therefore, the court has not "imposed a burden" on Scott, Harry and PCC that it "elected not to impose" on Matthews, the York Group and Milso at an earlier stage in this case. ECF No. 600 at 1-2.

(Id. at 79-80.) Based upon the foregoing, the Pontone defendants' accusation that this court applied different standards to the parties' requests to amend pleadings is unfounded and does not support the need for the undersigned district judge to recuse herself from presiding over this case.

The Pontone defendants next argue that this court has "undertaken the role of advocate for Plaintiffs including by suggesting arguments to Plaintiffs and then ruling in favor of the Plaintiffs upon their adoption of the Court's arguments." (ECF No. 684 at 10.) This accusation is

unfounded. The citations provided by the Pontone defendants in support of this accusation are citations to the court giving its preliminary assessment with respect to issues raised by the parties (which after reviewing the submissions of the parties and researching the issues raised is a common practice for this undersigned judge in cases pending before her), explaining the issues pending before the court, and requesting supplemental briefing to aid the court in deciding pending motions. The citations provided by the Pontone defendants do not show that "a reasonable person, with knowledge of all the facts, would conclude that the judge's impartiality might reasonably be questioned." In re Kensington, 353 F.3d at 220.

The Pontone defendants argue this court "repeatedly misstated the Pontone Defendants' positions and arguments." (ECF No. 684 at 11 n.7.) The Pontone defendants provide general citations to two hearing transcripts and two opinions issued by the court in support of their argument. It is the responsibility of Pontone defendants' to call to the court's attention any *material* misstatement made by the court with respect to their positions and explain how they were prejudiced by the misstatement. The Pontone defendants' vague allegations about the court misstating their positions is not a basis for the undersigned district court judge to recuse from this case.

The Pontone defendants argue without any citation to the record that this court "considered, in ruling on the Pontone Defendants' motions, ***ex-parte*** (and inaccurate) communications and submissions by the Special Master, without timely disclosure to the Pontone Defendants' of the existences of such communications and reports." (ECF No. 684 at 11 n.7.) It appears the Pontone defendants are referencing the issue they raised in a notice they filed with the court on June 10, 2014. (ECF No. 689.)

On October 18, 2012, the Pontone defendants in a motion requested "access to certain submissions and other materials prepared by the Special Master and submitted to this Court on an ex parte basis (collectively the "ex parte reports") and respectfully request that all ex-parte reports be filed on the docket of this case." (ECF No. 338 at 1.) In an order dated October 19, 2012, that this court entitled "notice" on the docket, the court granted the Pontone defendants' request and attached to the order two summaries prepared by the Special Master in this case. (ECF No. 341 at 3.) The court entered the order granting the Pontone defendants' motion as a "remark" on the ECF system, and selected the "terminate motion" option provided by the ECF system to terminate the Pontone defendant's motion for access. Unbeknownst to the court at the time, because the court selected the "Terminate Motion" option, the ECF system did not generate an email notice to the parties about the court's order. The order, however, was ***always*** publicly available for the parties to view. In other words, at any time the parties viewed the court's docket after the court filed the order dated October 19, 2012, the parties could view and access the order because it was publicly available and filed on the docket. The failure of the court to cause an email notice to be sent to the parties in this case with respect to the order dated October 19, 2012, was inadvertent. Neither party received notice of the filing of the court's order, and the Pontone defendants never raised with the court that their motion for access was never resolved or reviewed. Furthermore, modification of an entry on the court's docket, which in this case was done routinely and without prior notice to this court or its chambers by an employee in the Clerk of Court's office, does not automatically generate an email notice to the parties. The employee in the Clerk of Court's office modified the text entry accompanying the order dated October 19, 2012, by specifying the name of the motion filed by the Pontone defendants. In the original text entry the motion was titled "Motion for Miscellaneous Relief;" the title was modified to "Motion

FOR ACCESS TO EX PARTE REPORTS SUBMITTED BY SPECIAL MASTER TO THE COURT." The modification was not material; indeed, it did not change the meaning of the order dated October 19, 2012, or the text entry accompanying the order. Based upon the foregoing, as set forth in the order dated October 19, 2012, this court properly interacted with the Special Master consented to by all parties in this case, and the Pontone defendants' accusations with respect to the court's failure to provide notice of its order dated October 19, 2012, is not sufficient to show that "a reasonable person, with knowledge of all the facts, would conclude that the judge's impartiality might reasonably be questioned." In re Kensington, 353 F.3d at 220.

The Pontone defendants argue this court has shown "personal animus toward the Pontone Defendants" and "extreme leniency to Plaintiffs despite numerous instances of egregious conduct." (ECF No. 684 at 11.) The citations in support of this argument provided by the Pontone defendants do not support their accusation of personal animus toward the Pontone defendants or "extreme leniency" towards plaintiffs. In the two transcripts and opinion cited by the Pontone defendants in support of their accusation of personal animus, the court instructs counsel for the Pontone defendants that disparaging remarks directed toward the court or the Special Master will not be tolerated. Indeed, the three instances cited by the Pontone defendants are not the only instances in this aged case in which the court instructed __*all*__ parties that ad hominem attacks against the court, the Special Master, or opposing counsel would not be tolerated. There is nothing in the transcripts or opinion cited by the Pontone defendants that shows the court has a personal animus toward the Pontone defendants; rather, the citations evidence this court's efforts to direct this case towards resolution on the merits. Additionally, the Pontone defendants' citations to the record in support of their accusations that this court has been extremely lenient to plaintiffs—which include citations to motions not yet decided by the court—are not persuasive. Indeed, this court has ruled in favor of the Pontone defendants numerous times throughout this litigation, including—but not limited to—granting the Pontone defendants' motions for extension of time, (ECF No. 56 (granted on 1/11/11); ECF No. 94 (granted on 4/20/2011); ECF No. 107 (granted on 5/4/11); ECF No. 175 (granted on 11/16/11); ECF No. 211 (granted on 3/22/12); ECF No. 309 (granted in part on 8/22/12); ECF No. 340 (granted in part on 11/1/12; H.T. 12/5/12 (ECF No. 443) at 55 (granting the Pontone defendants an extension of time to respond to ECF No. 340); ECF No. 481 (granted on 3/11/13), motions seeking leave to file a reply or sur-reply brief, (ECF No. 33 (granted on 10/20/10); ECF No. 133 (granted on 7/20/11); ECF No. 163 (granted on 10/4/11); ECF No. 194 (granted on 1/31/12); ECF No. 265 (granted on 6/21/12); ECF No. 433 (granted on 1/8/13); ECF No. 457 (granted on 2/28/13); ECF No. 593 (granted on 6/20/13); ECF No. 596 (granted on 6/26/13); ECF No. 616 (granted on 11/13/13); ECF No. 625 (granted on 11/26/13); ECF No. 629 (granted on 12/13/13); ECF No. 661 (granted on 4/24/14); ECF No. 674 (granted on 5/27/14), and several discovery motions, see e.g., (H.T. 8/31/12 (ECF No. 331)); (H.T. 12/13/12 (ECF No. 444); (H.T. 12/19/12 (ECF No. 445)). The court also granted in part the Pontone defendants' motion for summary judgment (ECF No. 472) and dismissed three claims plaintiffs asserted against them. (ECF Nos. 642, 643.) Under those circumstances, the Pontone defendants failed to show that recusal of the undersigned district judge based upon alleged personal animus toward the Pontone defendants or favoritism toward plaintiffs is appropriate in this case.

Based upon the foregoing, this court is unpersuaded that the Pontone defendants met their burden to show "a reasonable person, with knowledge of all the facts, would conclude that the judge's impartiality might reasonably be questioned." In re Kensington, 353 F.3d at 220. It is

## A.  Applicable Law

Batesville argues this case should be transferred to the United States District Court for the Southern District of New York, pursuant to 28 U.S.C. § 1404(a). The Pontone defendants argue this case should be transferred to the United States District Court for either the Southern or Eastern District of New York, pursuant to 28 U.S.C. § 1404(a). Section 1404(a) provides:

> (a) For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought or to any district or division to which all parties have consented.

28 U.S.C. § 1404(a). "Section 1404(a) is intended to place discretion in the district court to adjudicate motions for transfer according to an 'individualized, case-by-case consideration of convenience and fairness.'" Stewart Org., Inc. v. Ricoh Corp., 487 U.S. 22, 29 (1988) (quoting Van Dusen v. Barrack, 376 U.S. 612, 622 (1964)). A transfer, however, "is not to be liberally granted." Shutte v. Armco Steel Corp., 431 F.2d 22, 25 (3d Cir. 1970). Batesville and the Pontone defendants—as movants—bear the burden of establishing the need for transfer, and "'unless the balance of convenience of the parties is strongly in favor of defendant, the plaintiff's choice of forum should prevail.'" Id. (quoting Owatonna Mfg. Co. v. Melroe Co., 301 F.Supp. 1296, 1307 (D. Minn. 1969)); Jumara v. State Farm Ins. Co., 55 F.3d 873, 879 (3d Cir. 1995).

> A court considering a motion to transfer venue performs a two-part analysis. First, the court must decide whether the district to which the movant seeks to transfer the case has proper jurisdiction and venue, i.e., could the case have been brought in the transferee district in the first instance. Lawrence v. Xerox Corp., 56 F.Supp.2d 442, 450–451 (D.N.J.1999). Second, the court applies a number of

---

apparent that the Pontone defendants desire to remove the undersigned judge from presiding over this case because they are unhappy with certain decisions rendered by this court. Disagreement with the court's judicial rulings is "'grounds for appeal, not for recusal.'" United States v. Wecht, 484 F.3d 194, 218 (3d Cir. 2007) (quoting Liteky v. United States, 510 U.S. 540, 555 (1994)). The Pontone defendants' request for the undersigned judge to recuse herself will, therefore, be denied.

public and private factors to determine which forum is most appropriate to consider the case. Id.

Centimark Corp. v. Jacobsen, Civ. Action No. 11-1137, 2011 WL 6000719, at *6 (W.D. Pa. Nov. 30, 2011) ("Jacobsen"). The court of appeals in Jumara recognized that courts in analyzing whether transfer is appropriate under § 1404(a) have not limited their analyses to the "three enumerated factors in §1404(a)" and set forth a list of private and public interest factors that a court should consider to determine whether transfer is appropriate. Jumara, 55 F.3d at 879-80. The private interest factors include:

- The plaintiff's forum preference;

- The defendant's forum preference;

- Whether the claim arose elsewhere;

- The convenience of the parties as indicated by their relative physical and financial condition;

- The convenience of the witnesses—but only to the extent that the witnesses may actually be unavailable for trial in one of the fora; and

- The location of books and records (similarly limited to the extent that the files could not be produced in the alternative forum).

Id. at 879.

The public interest factors include:

- Enforceability of the judgment;

- Practical considerations that could make the trial easy, expeditious, or inexpensive;

- The relative administrative difficulty in the two fora resulting from court congestion;

- The local interest in deciding local controversies at home;

- The public polices of the fora; and

- The familiarity of the trial judge with the applicable state law in diversity cases.

Id. at 879-80.

Here, plaintiffs argue the Pontone defendants waived their rights to object to venue in this court when they agreed to forum selection clauses in their employment agreements with York Group. "The presence of a forum-selection clause…will be a significant factor that figures centrally in the district court's calculus." Stewart, 487 U.S. at 29. In Atlantic Marine Construction Co., Inc. v. United States District Court of the Western District of Texas, 134 S.Ct. 568 (2013), the Supreme Court explained:

> The calculus changes…when the parties' contract contains a valid forum-selection clause, which "represents the parties' agreement as to the most proper forum." Stewart, 487 U.S., at 31, 108 S.Ct. 2239. The "enforcement of valid forum-selection clauses, bargained for by the parties, protects their legitimate expectations and furthers vital interests of the justice system." Id., at 33, 108 S.Ct. 2239 (KENNEDY, J., concurring). For that reason, and because the overarching consideration under § 1404(a) is whether a transfer would promote "the interest of justice," "a valid forum-selection clause [should be] given controlling weight in all but the most exceptional cases." Id., at 33, 108 S.Ct. 2239 (same).

Atl. Marine, 134 S.Ct. at 581. Accordingly, a district court analyzing whether to grant a motion to transfer venue should consider the applicability of a valid forum selection clause[3] to a case and give the forum selection clause controlling—but not dispositive—weight. Id.; Jumara, 55 F.3d at 875.

---

[3]    In MoneyGram Payment Sys., Inc. v. Consorcio Oriental, S.A., 65 F. App'x 844 (3d Cir. 2003), the court recognized:

> a forum selection clause is presumptively valid and will be enforced by the forum unless the party objecting to its enforcement establishes (1) that it is the result of fraud or overreaching; (2) that enforcement would violate strong public policy of the forum; or (3) that enforcement would in the particular circumstances of the case result in jurisdiction so seriously inconvenient as to be unreasonable.

MoneyGram, 65 F. App'x at 846.

The Court in <u>Atlantic Marine</u> noted that the applicability of a valid forum selection clause to a case changes the court's analysis with respect to the private interest factors. <u>Atl. Marine</u>, 134 S.Ct. at 582. The court held that if there is a valid forum selection clause <u>only</u> the *public* interests factors are considered. The court explained:

> When parties agree to a forum-selection clause, they waive the right to challenge the preselected forum as inconvenient or less convenient for themselves or their witnesses, or for their pursuit of the litigation. A court accordingly must deem the private-interest factors to weigh entirely in favor of the preselected forum. As we have explained in a different but " 'instructive' " context, <u>Stewart</u>, supra, at 28, 108 S.Ct. 2239, "[w]hatever 'inconvenience' [the parties] would suffer by being forced to litigate in the contractual forum as [they] agreed to do was clearly foreseeable at the time of contracting." <u>The Bremen v. Zapata Off–Shore Co.</u>, 407 U.S. 1, 17–18, 92 S.Ct. 1907, 32 L.Ed.2d 513 (1972); see also <u>Stewart</u>, *supra*, at 33, 108 S.Ct. 2239 (KENNEDY, J., concurring) (stating that Bremen 's "reasoning applies with much force to federal courts sitting in diversity").

> As a consequence, a district court may consider arguments about public-interest factors only. See n. 6, *supra*. Because those factors will rarely defeat a transfer motion, the practical result is that forum-selection clauses should control except in unusual cases. Although it is "conceivable in a particular case" that the district court "would refuse to transfer a case notwithstanding the counterweight of a forum-selection clause," <u>Stewart</u>, *supra*, at 30–31, 108 S.Ct. 2239, such cases will not be common.

<u>Id.</u>

### B.  The Pontone defendants' motion to transfer venue

Scott Pontone and Harry Pontone each entered into employment agreements with York Group. (ECF No. 470-1; ECF No. 470-11.) Each employment agreement is effective with respect to Scott Pontone's and Harry Pontone's relationships with Milso and Matthews as well. (ECF No. 470-1 at 2; ECF No. 470-11 at 3.) Paragraph 6.04 in each of the employment agreements provides:

> **<u>Jurisdiction Venue and Service of Process.</u>** Each party (a) agrees that any suit, action or proceeding arising out of or relating to this Agreement shall be brought solely in the state or federal courts of Pittsburgh, Pennsylvania or New York, New York; (b) consents to the exclusive jurisdiction of each such court in any suit,

> action or proceeding relating to or arising out of this Agreement; (c) waives any objection that it may have to the laying of venue in any such suit, action or proceeding in any such court; and (d) agrees that service of any court paper may be made in such manner as may be provided under applicable laws or court rules governing service of process.

(ECF No. 470-1 ¶ 6.04; ECF No. 470-11 ¶ 6.04.)

Plaintiffs argue that pursuant to the foregoing paragraph of Scott Pontone's and Harry Pontone's employment agreements, the Pontone defendants are "precluded from seeking transfer" in this case because they "waived any objection they may have to venue in this forum." (ECF No. 671 at 3.) Plaintiffs argue that paragraph 6.04 of Scott Pontone's employment agreement is equally applicable to Pontone Casket because it is owned and controlled by Scott Pontone.[4] (Id.)

The Pontone defendants do not argue paragraph 6.04 of the employment is invalid; rather, they argue paragraph 6.04 of the employment agreements does not bar them from seeking a transfer of this case to the United States District Court for either the Southern or Eastern District of New York because both courts are located in New York, New York, which is one of two permissible fora provided for in paragraph 6.04. (ECF No. 684 at 8.) The Pontone defendants argue that under New York law, "there is no waiver of the right to seek transfer from/to one of the permissible fora provided for in the agreement where, as in this case, a contractual forum selection provision *expressly* provides for two permissible fora." (Id.) (emphasis in original) (citing Sharimalia Food Corp., v. Monarch Wine Co., L.P., Civ. Action No. 91-6691, 1992 WL 58308 (S.D.N.Y. Mar. 13, 1992)).

The facts of Sharimalia concerned three lawsuits. The first lawsuit was filed in July 1991 in the United States District Court for the Northern District of Illinois, and was settled by the

---

[4] The Pontone defendants do not dispute the applicability of paragraph 6.04 of Scott Pontone's employment agreement to Pontone Casket's right to object to venue in this court.

parties on September 13, 1991, pursuant to a settlement agreement. <u>Sharimalia</u>, 1992 WL 58308, at *1. The second lawsuit, i.e., a declaratory judgment action that implicated the settlement agreement from the first lawsuit, was filed on October 4, 1991, in the United States District Court for the Southern District of New York. <u>Id.</u> The third lawsuit, which also implicated the settlement agreement from the first lawsuit, was filed on November 12, 1991, in the United States District Court for the Northern District of Illinois. <u>Id.</u> The defendants in the second lawsuit argued to the District Court for the Southern District of New York that the case should be transferred from the Southern District of New York to the Northern District of Illinois. <u>Id.</u> at *2. The District Court for the Southern District of New York noted that the "first filed rule" was applicable to the case because there were two lawsuits pending between the same parties, i.e., the second and third lawsuits, in two different fora. <u>Id.</u> The court explained that pursuant to the first filed rule, "a court should give the first filed action priority, absent the showing of balance of convenience in favor of the later filed action or special circumstances which justify giving priority to that action." <u>Sharimalia</u>, 1992 WL 58308, at *2. The court commented that the "balance of convenience d[id] not tip decidedly toward either New York or Illinois" because the second and third lawsuits encompassed the same issues and arose from the same controversy. <u>Id.</u> The court then considered whether "special circumstances" existed warranting giving priority to the third lawsuit and transferring the case to the Northern District of Illinois. <u>Id.</u>

The court held that two "special circumstances" existed that warranted transferring the case to the Northern District of Illinois. <u>Sharimalia</u>, 1992 WL 58308, at *3. First, the second lawsuit was a declaratory judgment action based upon a notice letter the defendants sent to the plaintiff that gave the plaintiff reasonable notice of the defendants' impending third lawsuit filed against the plaintiff; indeed, the plaintiff acknowledged it filed the second lawsuit "in apparent

anticipation" of the defendants filing suit in Illinois. Id. Second, the court explained that resolution of the allegations in the complaint filed in the second lawsuit "require[d] [the] Court to interpret the scope of the Settlement Agreement[, which] had its genesis in the same court and before the same judge, to which [the defendants] request[ed] transfer." Id. The court reasoned that in light of the first lawsuit being filed and settled in the United States District Court for the Northern District of Illinois, that court was "already familiar with the dispute between the parties," and, therefore, "it [would] be more efficient for [the second] suit to be litigated before that court." Sharimalia, 1992 WL 58308, at *3. The court held that based upon considerations of judicial efficiency and comprehensive disposition of the litigation the second lawsuit would be transferred to the United States District Court for the Northern District of Illinois, i.e., where the defendants filed the first and third lawsuits. Id.

The plaintiff in Sharimalia argued, however, that pursuant to a forum-selection clause entered into by the parties, the defendants waived their right to object to improper venue in the United States District Court for the Southern District of New York. Sharimalia, 1992 WL 58308, at *3. The forum-selection clause provided:

> [T]he parties expressly agree that 'any court of competent jurisdiction' shall include any and all of the state and federal courts of general jurisdiction with jurisdiction in Illinois or in New York, the jurisdiction and venue of which are hereby expressly consented to by the parties hereto, all objections thereto being expressly waived by the parties hereto.

Id. at *3. The court was not persuaded by the plaintiff's argument with respect to the forum-selection clause, explaining:

> The parties consented to both jurisdictions, and jurisdiction and venue in either New York or Illinois will comply with the Settlement Agreement's forum-selection clause. Furthermore, Congress intended that motions to transfer within the federal system be governed by multiple considerations. Stewart Organization, Inc. v. Ricoh Corp., 108 S.Ct. 2239, 2244–2245 (1988). The forum-selection clause should weigh no more decisively than any of the other considerations in

> the court's balance of convenience. Accordingly, the forum-selection clause is only one relevant factor in this Court's decision. <u>Stewart Org.</u>, 108 S.Ct. at 2245. Therefore, because the parties agreed to either of the two forums, this Court does not find the forum-selection clause significant enough to outweigh the above mentioned factors favoring transfer to the Northern District of Illinois.

<u>Id.</u>

<u>Sharimalia</u>, decided in 1992, is not persuasive to this court in this case for three reasons. First, in <u>Sharimalia</u>, the court, which did not have the benefit of the Court's pronouncements in <u>Atlantic Marine</u>, which was decided in 2013, noted: "The forum-selection clause should weigh no more decisively than any of the other considerations in the court's balance of convenience." <u>Sharimalia</u>, 1992 WL 58308, at *3. Under <u>Atlantic Marine</u>, however, a court, if the parties agreed to a forum selection clause, should consider only the public interest factors. The private interest factors need not be considered because when parties agree to litigate their disputes in a particular forum pursuant to a forum-selection clause, "they waive the right to challenge the preselected forum as inconvenient or less convenient for themselves or their witnesses, or for their pursuit of the litigation." <u>Atl. Marine</u>, 134 S.Ct. at 582. Accordingly, a forum selection clause when applicable will *always* be given more weight than the private interest factors in the court's balance of convenience, and it would be error for this court to follow <u>Sharimalia</u> and hold the forum-selection clause "should weigh no more decisively than any of the other considerations in the court's balance of convenience." <u>Sharimalia</u>, 1992 WL 58308, at *3.

Second, at the time the court in <u>Sharimalia</u> decided the defendants' motion to transfer, a lawsuit was pending between the same parties concerning the same subject matter in the transferee court, i.e., the United States District Court for the Northern District of Illinois, which was a court in one of the permissible fora provided for in the forum selection clause and was *more* familiar with the case than the transferor court. <u>Sharimalia</u>, 1992 WL 58308, at *1, *3.

Here, however, a lawsuit between the parties is not pending in a state or federal court in New York, New York, and this court <u>cannot</u> conclude that any state or federal court in New York, New York, is *more* familiar than this court with the facts of this case.

Third, the court's holding in <u>Sharimalia</u> focused on the forum selection clause language of the pertinent provision, i.e., "the parties expressly agree that 'any court of competent jurisdiction' shall include any and all of the state and federal courts of general jurisdiction with jurisdiction in Illinois or in New York," and did not consider the effect of the waiver language of the same provision, i.e., "all objections thereto being expressly waived by the parties hereto." <u>Sharimalia</u>, 1992 WL 58308, at *3. The court did not consider whether the defendants in that case as a matter of contract law expressly waived their right to object to venue in either of the permissible fora by filing a motion to transfer venue. <u>Sharimalia</u>, therefore, is not as persuasive as the Pontone defendants suggest with respect to whether the Pontone defendants waived their right to object to venue in a federal court in Pittsburgh, Pennsylvania.

Under New York contract law, which governs the employment agreements in this case, "the initial interpretation of a contract 'is a matter of law for the court to decide.'" <u>Int'l Multifoods Corp. v. Commercial Union Ins.</u>, 309 F.3d 76, 83 (2d Cir. 2002) (quoting <u>K. Bell & Assocs., Inc. v. Lloyd's Underwriters</u>, 97 F.3d 632, 637 (2d Cir. 1996)). The court in <u>Multifoods</u> explained:

> The key inquiry at this initial interpretation stage is whether the contract is unambiguous with respect to the question disputed by the parties. "An ambiguity exists where the terms of a…contract could suggest 'more than one meaning when viewed objectively by a reasonably intelligent person who has examined the context of the entire integrated agreement and who is cognizant of the customs, practices, usages and terminology as generally understood in the particular trade or business.' "

Multifoods, 309 F.3d at 83 (quoting Morgan Stanley Grp. Inc. v. N.E. Ins. Co., 225 F.3d 270, 275 (2d Cir. 2000). Here, the waiver language contained in paragraph 6.04 of the employment agreements is not ambiguous. Subsection (a) of paragraph 6.04 provides that the parties to the employment contract agree that lawsuits arising out of or related to the employment agreements shall be filed "in the state or federal courts of Pittsburgh, Pennsylvania or New York, New York." (ECF No. 470-1 ¶ 6.04; ECF No. 470-11 ¶ 6.04.) Subsection (b) of paragraph 6.04 provides that the parties to the employment agreements "consent[] to the exclusive jurisdiction of each such court in any suit, action or proceeding relating to or arising out of [the employment agreements]." (Id.) Subsection (c) of paragraph 6.04 provides the parties to the employment contracts agree to "waive[] any objection that [they] may have to the laying of venue in any such suit, action or proceeding in any such court." (Id.) Reading subsections (a), (b), and (c) together, the parties to the employment agreements agreed that lawsuits arising out of or related to the employment agreements would only be filed in the state or federal courts of Pittsburgh, Pennsylvania, or New York, New York, and waived any objection to venue in any court in either of those fora. Notably the word "objection" is not confined by or limited to objections based only upon venue being improper. In the Pontone defendants' motion to transfer, they object to venue in this court by arguing that the federal courts in New York, New York, are more convenient venues for the adjudication of the claims pending before this court. Pursuant to paragraph 6.04 of their respective employment agreements with York Group, however, Scott Pontone and Harry Pontone waived their rights to object to venue in a state or federal court in Pittsburgh, Pennsylvania. The Pontone defendants' motion to transfer must, therefore, be denied. See Radian Guaranty Inc. v. Bolen, Civ. Action No. 13-6197, 2014 WL 1757204, at *11-12 (E.D. Pa. May 2, 2014) (denying defendants' motion to transfer venue under § 1404(a) because defendants waived

their rights to object to venue in a forum selection clause, which provided: 'The Grantee irrevocably and unconditionally…(iii) waives any objection to the laying of venue of any such proceeding in any such court.'").[5]

---

[5]     Similar to the language of the forum selection clauses in issue in this case, i.e., the parties waive "any objection that [they] may have to the **laying of venue** in any such suit, action or proceeding in any such court," the forum selection clause in <u>Radian</u> provided that the parties "waive[d] any objection to the **laying of venue** of any such proceeding in any such court." <u>Radian</u>, 2014 WL 1757204, at *11 (emphasis added). The court in <u>Radian</u> determined that the parties' waiver of their rights to *object* to "laying of venue" included waiver of their rights to argue that venue should be transferred on the basis of convenience from one permissible forum provided for in the forum selection clause to another permissible forum provided for in the forum selection clause. <u>Id.</u> This court reaches the same conclusion with respect to this case. The Pontone defendants' waiver of their right to object to "laying of venue" in this court includes waiver of their rights to argue venue would be more convenient in a federal court in New York, New York.

The court in <u>Radian</u> recognized that under <u>Atlantic Marine</u>, the parties pursuant to a <u>mandatory</u> forum selection clause waive their "'right to challenge the preselected forum as inconvenient or less convenient for themselves or their witnesses, or for their pursuit of the litigation[ and] [a] court accordingly must deem the private-interest factors to weigh entirely in favor of the preselected forum.'" <u>Radian</u>, 2014 WL 1757204, at *12 (quoting <u>Atl. Marine</u>, 134 S.Ct. at 582). The court noted that while the forum selection clause in <u>Atlantic Marine</u> was **mandatory** ("all disputes between the parties "'**shall** be litigated in the Circuit Court for the City of Norfolk, Virginia, or the United States District Court for the Eastern District of Virginia, Norfolk Division'"), <u>Atl. Marine</u>, 134 S.Ct. at 575 (emphasis added), and the forum selection clause in <u>Radian</u> was **permissive** ("any legal proceeding arising out of this paragraph ***may*** be brought in the United States District Court for the Eastern District of Pennsylvania"), <u>Radian</u>, 2014 WL 1757204, at *12 (emphasis added), "the existence of a forum selection clause of any kind significantly undercuts any argument that the preselected forum is inconvenient for the parties or their witnesses." <u>Radian</u>, 2014 WL 1757204, at *12. The court based its rationale—in part—on the court of appeals pronouncement in <u>Jumara</u> that "'a forum selection clause is treated as a manifestation of the parties' preferences as to a convenient forum.'" <u>Id.</u> (quoting <u>Jumara</u>, 55 F.3d at 880).

The court in <u>Radian</u> did not decide whether the pronouncement in <u>Atlantic Marine</u> with respect to the effect a mandatory forum selection clause has on the court's consideration of the private interest factors applies with equal force to a *permissive* forum selection clause. In this case, however, the forum selection clause—like the forum selection clause in <u>Atlantic Marine</u>— *is* **mandatory** ("any suit, action or proceeding arising out of or relating to this Agreement **shall** be brought solely in the state or federal courts of Pittsburgh, Pennsylvania or New York, New York"). (ECF No. 470-1 ¶ 6.04; ECF No. 470-11 ¶ 6.04.) Under those circumstances, the Pontone defendants waived their "right to challenge [this forum] as inconvenient or less convenient for themselves or their witnesses, or for their pursuit of the litigation[ and] [the] court

Even assuming for the purpose of argument that the Pontone defendants did not waive their rights to file a motion to transfer in this case, pursuant to paragraph 6.04 of the employment agreements, they consented to venue in this court because this court is a federal court in Pittsburgh, Pennsylvania. Under <u>Atlantic Marine</u>, the Pontone defendants by consenting to venue in this court waived their rights to argue that this "preselected forum [is] inconvenient or less convenient for themselves or their witnesses, or for their pursuit of the litigation." <u>Atl. Marine</u>, 134 S.Ct. at 582. The Pontone defendants rely heavily on the private interest factors to argue this case should be transferred to a federal court in New York, New York. In considering the merits of the Pontone defendants' motion to transfer with respect to the claims asserted by and against the Pontone defendants, however, the court under <u>Atlantic Marine</u> is required to consider that the private interest factors set forth in <u>Jumara</u> "weigh entirely in favor of the preselected forum[,]" i.e., this court. <u>Id.</u> The only factors to be considered with respect to the Pontone defendants' motions under <u>Atlantic Marine</u> are the public interest factors. As discussed below, the public interest factors do not weigh strongly in favor of transfer. In light of the forum-selection clauses agreed to by the Pontone defendants, the balance of convenience would not weigh strongly in favor of transfer in this case. Paragraph 6.04 of the employment agreements providing for cases to be filed in federal or state courts in Pittsburgh, Pennsylvania, or New York, New York, does not change this analysis because the Pontone defendants could foresee when they entered into their employment agreements that this court was one of the possible fora contemplated by their agreements, and, accordingly, could foresee whatever inconvenience they would suffer by being forced to litigate in this forum. <u>See</u> <u>id.</u>

---

accordingly must deem the private-interest factors to weigh entirely in favor of the preselected forum." <u>Atl. Marine</u>, 134 S.Ct. at 582.

### C. Batesville's motion to transfer venue

Plaintiffs do not argue that a forum selection clause precludes Batesville from filing its motion to transfer venue or the Southern District of New York is not a proper forum for their claims asserted against Batesville. The court will, therefore, consider the merits of Batesville's motion, and engage in the second part of the § 1404(a) analysis with respect to the motion, i.e., apply the facts of this case to the private and public interest factors set forth in Jumara to determine whether this case should be transferred. The court will consider the arguments raised by Batesville in its motion to transfer as well as the arguments applicable to Batesville raised by the Pontone defendants in their motion to transfer, which were incorporated by reference in Batesville's reply brief.

### 1. Private interest factors[6]

#### i. Plaintiffs' choice of forum; Batesville's choice of forum; whether the claims arose elsewhere

"The plaintiff's choice of forum is a paramount consideration that should not lightly be disturbed." Raffel v. Monarch Dental Corp., Civ. Action No. 99-4571, 1999 WL 1212184, at *2 (E.D. Pa. Dec. 16, 1999). A plaintiff's choice of forum, however, may be given less weight when the operative facts of the plaintiff's claim occurred in another forum. Reightler v. Monmouth Bioproducts, LLC, Civ. Action No. 13-3019, 2014 WL 2480331, at *3 (M.D. Pa. June 3, 2014). Indeed, "[t]he location of the operative events is a 'primary factor' in a transfer motion." Schauder v. Int'l Knife & Saw, Inc., Civ. Action No. 02-8361, 2003 WL 1961611, at *3

---

[6] Because Batesville has the burden to show transfer is warranted in this case, the court's discussion is limited to the private and public interest factors raised by Batesville and the Pontone defendants. For example, no party raised the enforceability of judgment as a factor in its favor, and, therefore, it is not discussed in this opinion. See (ECF No. 657 at 19 (The Pontone defendants argue: "For instance, with respect to the factor pertaining to the 'enforceability of the judgment' there can be no question that a judgment rendered by a New York court is likely to be equally enforceable as one rendered by a Pennsylvania court.").

(S.D.N.Y. Apr. 28, 2003) (quoting <u>ZPC 2000, Inc. v. The SCA Grp., Inc.</u>, 86 F.Supp.2d 274, 279 (S.D.N.Y. 2000)). Notably, even when plaintiff's choice of forum differs from "the situs of the relevant events, it is still the most important factor the Court considers." <u>Raffel</u>, 1999 WL 1212184, at *2.

Here, plaintiffs' choice of forum is this court, the Pittsburgh Division of the United States District Court for the Western District of Pennsylvania. All plaintiffs are citizens of Pennsylvania, with offices in Pittsburgh, Pennsylvania. Batesville's choice of forum is the United States District Court for the Southern District of New York. Batesville is an Indiana corporation with its principal place of business in Indiana.

Batesville argues without further explanation or support that "all actions giving rise to the claims [in this case] took place in New York." (ECF No. 652.) This kind of conclusory allegation is not sufficient to support a motion to transfer; indeed, a party bearing the burden of proving transfer is warranted under § 1404(a) must provide the court with "'affidavits, depositions, stipulations, or other documents containing facts that would tend to establish the necessary elements for a transfer.'" <u>Plum Tree, Inc. v. Stockment</u>, 488 F.2d 754, 756-57 (3d Cir. 1973). Plaintiffs argue in response that "the locus of this action is Pittsburgh, not New York" because: (1) plaintiffs' businesses were managed out of Pittsburgh, Pennsylvania; (2) plaintiffs suffered damages in Pittsburgh, Pennsylvania; and (3) Scott Pontone's and Harry Pontone's employment agreements, which are "central" to plaintiffs' claims, were negotiated in Pittsburgh, Pennsylvania.[7] (<u>Id.</u> at 8.)

---

[7] The Pontone defendants dispute that Scott Pontone's and Harry Pontone's employment agreements were negotiated in Pittsburgh, Pennsylvania and submitted affidavits in support of their position. The court at this time need not resolve this issue, and, in any event, will not consider it as a factor in support of plaintiffs' position.

Based upon the record as a whole, including the submissions and arguments of the parties, it is clear that the events giving rise to the remaining claims in this case between plaintiffs and Batesville occurred in Pennsylvania *and* New York. Plaintiffs managed their businesses from Pittsburgh, Pennsylvania. York Grp., Inc. v. Pontone, Civ. Action No. 10-1078, 2012 WL 3127141, at *18 (W.D. Pa. July 31, 2012). On the other hand, the majority of witnesses in this case may be located in New York. "When the events occur in more than one district, a court can consider which jurisdiction has the stronger factual nexus to the claims." Greene v. Nat'l Head Start Ass'n, Inc., 610 F.Supp.2d 72, 75 (D.D.C. 2009) (citing Miller v. Insulation Contractors, Inc., 608 F.Supp.2d 97, 101-02 (D.D.C. 2009)). Based upon this court's familiarity with this case and the Pontone defendants' submissions with respect to their motion to transfer, which Batesville incorporated into its brief by reference, the record in this case shows that a majority—if not all—of the nonparty witnesses in this case may be located in New York, and Scott Pontone's and Harry Pontone's allegedly actionable activities took place in New York, New York, as well as certain of Batesville's actions. Although Batesville's and plaintiffs' businesses were managed outside New York, i.e., in Pittsburgh, Pennsylvania, and Batesville, Indiana, the actions of the corporations in this case involved the direction and management of conduct that took place in New York and was directed at the New York, New York, death care market. Under those circumstances, the evidence presented shows that a significant amount of the relevant conduct in this case occurred in New York, New York. Accordingly, the location of operative facts in this case weighs in favor of Batesville's position.[8]

---

[8] The court notes, however, that plaintiffs' choice of forum is still given some, if not considerable, weight in the court's analysis because although the balance tips in favor of the operative events in this case taking place in New York, New York, plaintiffs' businesses were managed out of Pittsburgh, Pennsylvania. This case is, therefore, unlike a case in which no operative events took place in the plaintiff's choice of forum.

### ii. The convenience of the witnesses[9]

The convenience of nonparty witnesses is "[o]ften cited as the most important factor in passing on a motion to transfer under Section 1404(a)." 8 CHARLES ALAN WRIGHT, ARTHUR R. MILLER & EDWARD H. COOPER, FEDERAL PRACTICE AND PROCEDURE § 3851 (3D ED. 2012).[10]

---

[9] The Pontone defendants in their submissions raised concerns about certain potential witnesses that may have contractual agreements with plaintiffs that would prevent the potential witnesses from voluntarily testifying in this case and could only be subpoenaed to testify in this case in New York. To the extent any such potential witness is subpoenaed to appear in New York, the court to serve the interests of justice will entertain a motion permitting the potential witnesses to voluntarily appear in this forum.

[10] The Pontone defendants in their reply brief argue:

> Scott Pontone and his small businesses would suffer great hardship if Scott were required to participate at a trial held approximately 400 miles away from their main place of business in New York for three weeks. See Reply Decl., Exhibit 6. In addition, Scott's family obligations would make it impossible for him to be able to attend his own trial in Pittsburgh and comply with his other obligations in New York. See id. Similarly, Harry Pontone would be substantially disadvantaged if he had to spend at least three weeks at trial in Pittsburgh while he is trying to obtain employment in New York. See Reply Decl., Exhibit 5.

(ECF No. 684 at 19.) The court under Atlantic Marine is not to consider the private interest factors with respect to the Pontone defendants because they agreed to not object—and consented to—venue in this forum. Under those circumstances, the court does not give any weight to the Pontone defendants' private interests.

The Pontone defendants raised the hardships faced by Scott Pontone and Harry Pontone if this case were to be tried in this court in response to plaintiffs' argument that the parties' convenience favors trying this case in this forum. (ECF No. 684 at 17-18.) The considerations raised by the Pontone defendants may also be considered under another private interest factor, i.e., the convenience of the parties as indicated by their relative physical and financial condition. In any event, the court pursuant to Atlantic Marine will not take into consideration the Pontone defendants' private interests in the balance of convenience in this case.

With respect to party witnesses or witnesses employed by a party, the court in Stillwagon v. Innsbrook Golf & Marina, LLC, Civ. Action No. 11-1338, 2013 WL 1180312 (W.D. Pa. Mar. 20, 2013), explained:

> "Party witnesses or witnesses who are employed by a party carry no weight in the 'balance of convenience' analysis since each party is able, indeed, obligated to procure the attendance of its own employees for trial. Expert witnesses or witnesses who are retained by a party to testify carry little weight in determining where the 'balance of convenience' lies (especially in an action for patent infringement) because they are usually selected [on the basis] of their reputation and special knowledge without regard to their residences and are presumably well compensated for their attendance, labor and inconvenience, if any. Fact witnesses

"When ruling on a § 1404(a) motion, a court may consider the convenience of the witnesses 'only to the extent that the witnesses may actually be unavailable for trial in one fora.'" Argo v. Marriott Int'l, Inc., Civ. Action No. 13-5507, 2014 WL 2572804, at *2 (E.D. Pa. June 6, 2014) (quoting Jumara, 55 F.3d at 879). This factor "can be relevant to protecting a defendant's opportunity to put on its case with witnesses who will appear in person at the trial." ADE Corp. v. KLA-Tencor Corp., 138 F.Supp.2d 565, 569 (D. Del. 2001). While live testimony is preferable, Raynes v. Davis, Civ. Action No. 05-6740, 2007 WL 4145102, at *4 (C.D. Cal. Nov. 19, 2007), "teleconferencing, video-depositions, and electronic filing are now ubiquitous." Jacobsen, 2011 WL 6000719, at *7. Convenience of witnesses has, therefore, "taken on less importance than it might have been given twenty years ago." Id.[11]

Relevant to the court's inquiry with respect to the convenience of witnesses is whether nonparty witnesses are subject to the court's power to subpoena witnesses, pursuant to Federal Rule of Civil Procedure 45(b), which "provides that a subpoena may be served within the District of the issuing court, within 100 miles of the place specified, within the state if the…state statute or court rule allows, or if a federal statutes so provides." Stillwagon v. Innsbrook Golf & Marina, LLC, Civ. Action No. 11-1338, 2013 WL 1180312 at *28 (W.D. Pa. Mar. 20, 2013) (citing Fed. R. Civ. P. 45(b)). Without evidence indicating that a witness is unwilling or unable

---

who possess first-hand knowledge of the events giving rise to the lawsuit, however, have traditionally weighed quite heavily in the "balance of convenience" analysis."

Stillwagon, 2013 WL 1180312, at *28 n.39 (quoting Affymetrix, Inc. v. Synteni, Inc., 28 F.Supp.2d 192, 203 (D. Del. 1998)).

[11] Indeed, this court has the courtroom technology to accommodate live testimony via video conferencing.

to testify at trial,[12] however, a court should be cautious to *presume* a witness will not appear; instead, "the better approach is to recognize that witnesses have and will appear here without having to be subpoenaed." ADE Corp., 138 F.Supp.2d at 570-71.[13]

Conclusory allegations about nonparty witness convenience will "not constitute evidence sufficient to establish…witnesses' unavailability." Argo, 2014 WL 2572804, at *2; Clay v. Oversears Carriers Corp., 61 F.R.D. 325, (E.D. Pa. 1973) ("Conclusory affidavits are not helpful and are insufficient. The names and location of witnesses should be supplied. Statements should be furnished as to the materiality of testimony of alleged witnesses. Such standards are necessary if the Court is to make a rational decision."). A party bearing the burden of proving transfer is

---

[12] In Stillwagon, the court commented:

> While the risk of a case going to trial with crucial witnesses outside of the Court's subpoena power who refuse to testify is one faced by all parties to a case, here, where none of the listed potential non-party witnesses are within this Court's subpoena power, but all are presumably within the proposed transferee Court's subpoena power, this factor weighs heavily in favor of transfer. Headon v. Colo., Boys Ranch, No. 204CV04847LDD, 2005 WL 1126962, at *7 (E.D.Pa. May 5, 2005) (granting motion to transfer and noting that convenience of non-party witnesses is "perhaps the most important factor"); Jahncke Serv., Inc. v. OKC Corp., 301 F.Supp. 866, 868 (D.Del.1969) (transferring the case because, inter alia, "nearly all the witnesses" were located in Louisiana, Texas, and Oklahoma).

Stillwagon, 2013 WL 1180312, at *28. In Stillwagon, however, the record reflected that the nonparty witnesses might be unwilling to appear at trial. The court explained: "Because Defendants implicate[d] [the nonparty witnesses] in a fraudulent scheme, they are unlikely to voluntarily travel to Pennsylvania to willingly participate in this case." Id. Contrastingly, the evidence presented in this case by Batesville and the Pontone defendants is insufficient to satisfy the burden to show nonparty witnesses are unwilling or unable to testify at trial. Unlike the nonparty witnesses in Stillwagon, the nonparty witnesses in this case have not been implicated in an allegedly fraudulent scheme.

[13] In ADE Corp., the court recognized:

> Rather than starting with a presumption that witnesses may not appear and concluding the case should be transferred based on that assumption, it may make more sense to look at the facts and circumstances of each witness to see whether a subpoena is necessary. Certainly, where a witness reports that he or she is willing to appear and testify, it does not make much sense to assume he or she will not appear here and that the case should therefore be transferred.

ADE Corp., 138 F.Supp.2d at 570-71.

warranted under § 1404(a) must provide the court with "'affidavits, depositions, stipulations, or other documents containing facts that would tend to establish the necessary elements for a transfer." Plum Tree, 488 F.2d at 756-57; see also Church of Jesus Christ of the Latter-Day Saints, 476 F.Supp. 381, 383 (E.D. Pa. 1979) ("Although plaintiff has indicated the number of possible witnesses, he has not reduced this list to an itemization of probable witnesses. Nor has he indicated the substance or materiality of the most important witnesses' testimony or how long these witnesses will be required at trial."); Illinois Nat'l Ins. Co. v. Banc One Acceptance Corp., Civ. Action No. 05-1260, 2008 WL 542362, at *6 (N.D. N.Y. Dec. 29, 2008) ("In this Circuit, a party moving under § 1404(a) is required to 'clearly specify the key witnesses to be called and must make a general statement of what their testimony will cover'") (quoting Hernandez v. Graebel Van Lines, 761 F.Supp. 983, 987 (E.D. N.Y. 1991); Dobson Bros. Constr. Co. v. D.M. Dozers, Inc., Civ. Action No. 06-3235, 2007 WL 258309, at *4 (D. Neb. 2007) ("[T]here is no evidence that any of the defendants' out-of-state witnesses would be unwilling to come voluntarily to the District of Nebraska. Nor is there evidence suggesting that these witnesses could not testify adequately via deposition."). "Moreover, the quality, not quantity, of the testimony of plaintiff's witnesses controls." Bartolacci, 476 F.Supp. at 383. "If the defendant has not produced such information so as to provide the Court with a rational basis for transferring an action and depriving a plaintiff of his choice of forum, then the defendant has not sustained his burden." Clay, 61 F.R.D. at 331.

Here, Batesville relies heavily on the location of the eighteen nonparty witnesses "from the five New York customer groups at issue" in support of its motion to transfer. (ECF No. 652

at 4.)[14] The Pontone defendants argue a list of thirty-five nonparty witnesses that are expected to be called at trial "are located within the jurisdiction and subpoena power of both the SDNY and EDNY, the proposed transferee courts." (ECF No. 684 at 12.) Batesville has not—even upon consideration of the arguments made by the Pontone defendants—satisfied its burden to show these witnesses being located in New York is a sufficient basis for the court to transfer this case. Convenience of witnesses is relevant to the court's analysis with respect to whether to grant a motion to transfer "**only to the extent that the witnesses may actually be unavailable for trial in one of the fora**." Jumara, 55 F.3d at 879 (emphasis added); In re Amendt, 169 F. App'x 93, 96 (3d Cir. 2006). Batesville did not produce any evidence indicating that any of the eighteen customer witnesses—or any nonparty witness located in New York—would be unavailable for trial, i.e., the witnesses are unwilling or unable to appear in this court to testify at trial. Neither Batesville nor the Pontone defendants submitted any affidavits from the nonparty potential witnesses located in New York, New York, that they intend to call at trial to testify on their behalves.[15] (ECF No. 684-3 ¶ 5; ECF No. 684-4 ¶ 4.) The Pontone defendants and Batesville

---

[14] The Pontone defendants in their motion to transfer argue that the "non-party customers who are at issue in connection with the remaining claims—are all located in New York and are outside of the subpoena power of this Court." (ECF No. 657 at 5.) They, however, could be subpoenaed to appear in New York and appear live via video conference in trial in this court.

[15] The Pontone defendants submitted affidavits from Harry Pontone and Scott Pontone, and three Batesville employees, i.e., Joseph Redmond ("Redmond"), Josephine Pesce ("Pesce"), and David Bowers ("Bowers"). Each of the affidavits provides that it would be inconvenient for the affiant if this case were to be tried in Pittsburgh, Pennsylvania, and more convenient for the affiant for the case to be tried in New York, New York. (ECF Nos. 684-3, 648-4, 684-5, 684-6, 684-7.) The convenience of Harry Pontone and Scott Pontone, however, is not in issue in this case because they agreed to venue in this court in their employment agreements, and could, therefore, foresee any inconvenience arising from this case being litigated in this court. With respect to the convenience of Batesville employees, the court in Stillwagon, a decision heavily relied upon by the Pontone defendants, explained: "'Party witnesses or witnesses who are employed by a party carry no weight in the 'balance of convenience' analysis since each party is able, indeed, obligated to procure the attendance of its own employees for trial.'" Stillwagon, 2013 WL

pointed to some evidence to show that at least some of the nonparty witnesses have information material to the claims and defenses raised in this case. In any event, neither Batesville nor the Pontone defendants satisfied their burden to prove any of the nonparty witnesses is unable or unwilling to come to Pittsburgh, Pennsylvania to testify at a trial in this matter. Under those circumstances, the court will not *presume* that the witnesses would be unwilling or unable to testify at a trial. This factor, i.e., convenience of nonparty witnesses does not, therefore, weigh in favor of granting Batesville's motion to transfer, and is considered neutral in the court's analysis. Even if a witness was not willing to travel to Pittsburgh Pennsylvania, video conferencing to permit the witness to present live testimony during trial can be arranged which would ameliorate the weight that might otherwise be afforded to the witness' unavailability.

### iii. Location of books and records

The location of books and records is relevant to the court's analysis only "to the extent that the files could not be produced in the alternative forum." <u>Jumara</u>, 55 F.3d at 879. District courts within the Third Circuit are in agreement that "technological advances of recent years have significantly reduced the weight of this factor in the balance of convenience analysis." <u>Am. High-Income Trust v. AlliedSignal Inc.</u>, Civ. Action No. 00-690, 2002 WL 373473, at *5 (D.Del. Mar. 7, 2002) (cited by, <u>inter alia</u>, <u>Metalworking Lubricants Co.</u>, 634 F.Supp.2d 568, 576 (W.D. Pa. 2009); <u>Riley v. Muhammad</u>, Civ. Action No. 13-2766, 2014 WL 1666666, at *3

---

1180312, at *28 n.39 (quoting <u>Affymetrix, Inc. v. Synteni, Inc.</u>, 28 F.Supp.2d 192, 203 (D. Del. 1998)). The convenience of Redmond, Pesce, and Bowers does not, therefore, factor into the court's analysis. <u>See Stillwagon</u>, 2013 WL 1180312, at *28 n.39.

Furthermore, the declarations provided by Harry Pontone and Scott Pontone with respect to the convenience of nonparty witnesses are not sufficient to carry Batesville's burden to show those witnesses will be <u>unavailable</u> for trial in this court. Accordingly, as set forth above, Batesville failed to show the convenience of the nonparty witnesses is a factor that weighs in favor of transferring this case to the United States District Court for the Southern District of New York.

(M.D. Pa. Apr. 25, 2014); <u>McLaughlin v. GlaxoSmithKline, L.L.C.</u>, Civ. Action 12-3272, 2012 WL 4932016, at *5 (E.D. Pa. Oct. 17, 2012)).

The Pontone defendants in their brief in support of the motion to transfer assert "[w]ith the advent of electronic discovery most books and records, including all discovery in this case, are available electronically at any location. Accordingly, this factor is neutral and does not impact the transfer analysis one way or the other." (ECF No. 657 at 15.) The Pontone defendants argue in their reply brief, however, that the location of books and records in this case *does* favor transfer of this action to New York because:

(1) "[T]he sources of proof yet to made available in the case primarily come from non-party witnesses who are located in New York;"

(2) The court "ordered that the Pontone Defendants' counsel be limited to viewing unredacted documents of the Plaintiffs _**solely**_ at their counsel's offices," which are located in New York, New York; and

(3) "[T]he possibility of viewing the premises located in the transferee district supports transferring this case to New York for trial."

(ECF No. 684 at 24-25.) With respect to the first argument, the Pontone defendants have not made the requisite showing that the "sources of proof" from the nonparty witnesses in New York could *not* be produced in this forum.

The Pontone defendants' second argument applies specifically to the convenience of the Pontone defendants' private interests. Even if the court were to consider that argument, however, it does not support transfer of this case to a state or federal court in New York, New York. The court in an order dated April 10, 2013, held that "the unredacted version of the document [in issue] be made available in the offices of plaintiffs' counsel at the election of defendants' counsel _**either**_ in New York, New York or Pittsburgh, Pennsylvania." (ECF No. 505 at 2.) Counsel for the Pontone defendants may, therefore, review the document in issue in the court's

order in preparation for trial in New York, New York, where her offices are located. In any event, however, "[t]he convenience of counsel is not a factor to be considered" in the court's balance of convenience. Solomon v. Cont'l Am. Life Ins. Co., 472 F.2d 1043, 1047 (3d Cir. 1973) (citing Chicago, R.I. & P.R. Co. v. Igoe, 220 F.2d 299, 304 (7th Cir. 1955)).

> The Pontone defendants in support of their third argument assert:
>
> [T]he possibility of viewing the premises located in the transferee district supports transferring this case to New York for trial. Howell v. Shaw Indus., 1993 U.S. Dist. LEXIS 13784, *3, 6 (E.D. Pa. Sept. 29, 1993) ("A motion to transfer venue is determined by . . . [the] possibility of viewing [the] premises."). In its summary judgment opinion, this Court has indicated that Ms. Pesce's alleged shredding of documents in Plaintiffs' Brooklyn offices is one of the critical pieces of circumstantial evidence that "could enable a reasonable jury to conclude that Scott and Harry misappropriated confidential information." Dkt. No. 642 at 25. This allegation lacks any basis in fact, as the Pontone Defendants intend to prove, including by requesting that the jury be permitted to view the premises in question, which further demonstrate the falsity of Plaintiffs' allegations. The premises in question, at 534 Union Street, Brooklyn, New York are located just a few miles from both the SDNY and EDNY. See Reply Decl., Exhibit 8-A at PW-16.

(ECF No. 684 at 25.) In the decision cited by the Pontone defendants, i.e., Howell v. Shaw Indus., Civ. Action Nos. 93-2068 and 93-2638, 1993 WL 387901 (E.D. Pa. Oct. 1, 1993), the court noted that "viewing the premises" is relevant to the court's transfer analysis only when the jury "viewing the premises" is **necessary** to the resolution of the case. Howell, 1993 WL 387901, at *6. The Pontone defendants have not shown how the jury viewing in-person plaintiffs' offices located in New York, New York, is relevant and necessary to the resolution of the claims asserted in this case. If the Pontone defendants are able to prove that viewing the plaintiffs' offices located in New York, New York, is relevant to the claims or defenses asserted in this case, they may show to the jury video or photographs of the location. The Pontone defendants have not shown why the less burdensome approach of showing the jury video or

photographs of plaintiffs' New York, New York offices—as opposed to taking the jury to the physical location—does not suffice in this case.

Because none of the arguments raised by the Pontone defendants and incorporated by reference by Batesville are persuasive, this factor, i.e., the location of the books and records, is neutral in the court's balance of convenience. This is especially true in light of the technological advances available to the court and parties litigating this case.

### 2. Public interest factors

#### i. The relative administrative difficulty in the two fora resulting from court congestion

In analyzing court congestion under § 1404(a), "[t]he real issue is not whether a dismissal will reduce a court's congestion but whether a trial may be speedier in another court because of its less crowded docket." Gates v. Learjet Corp. v. Jensen, 743 F.2d 1325, 1336 (9th Cir. 1984); 15 CHARLES ALAN WRIGHT, ARTHUR R. MILLER, EDWARD H. COOPER, & RICHARD D. FREER, FEDERAL PRACTICE AND PROCEDURE § 3854 (4TH ED. 2013) ("[W]hat is relevant, and undoubtedly what the courts have in mind in writing opinions that give significant weight to this element, is that getting to trial may be speedier in another district because of its less crowded docket."). Court congestion is not a decisive factor; it must be weighed against all other relevant factors, and district courts within the Third Circuit have not placed "great importance" on this factor. Andrews v. Norfold S. Corp., Civ. Action No. 07-2688, 2008 WL 687255, at *4 (D.N.J. Mar. 4, 2008); see High River Ltd. Partnership v. Mylan Laboratories, Inc., 353 F.Supp.2d 487, 499 (M.D. Pa. Jan. 27, 2005) ("Given that the Southern District of New York is clearly more convenient for the parties and witnesses in this case, the fact that court congestion is less in the Middle District of Pennsylvania is not enough alone to continue with the action in this district."); Penda Corp. v. STK, LLC, Civ. Action No. 03-5578, 2004 WL 2004439, at *3 (E.D. Pa. Sept. 7,

2004) ("Although the relative congestion of court dockets may be evaluated in a motion to transfer, it generally is not a factor worthy of great weight.") (collecting decisions).

In this case, Batesville argues: "This Court presently has three District Judge vacancies, and the assigned Chief Judge has the extra burden of significant administrative responsibilities. The Southern District of New York, meanwhile, has no judicial vacancies….This favors transfer." (ECF No. 652 at 5.) At least one court of appeals, however, has held that consideration of judicial vacancies is inappropriate in a § 1404(a) transfer analysis. In Coady v. Ashcraft & Gerel, 223 F.3d 1 (1st Cir. 2000), the court held:

> While expressions of concern that the President and Congress fill existing judicial vacancies are appropriate in other contexts, it has no place in determining the rights of litigants under 28 U.S.C. § 1404(a), and is not "in the interest of justice." 28 U.S.C. § 1404(a). Neither constitutional nor statutory rights of parties are suspended when there are judicial vacancies in a district.

Coady, 223 F.3d at 11. In any event, evidence of judicial vacancies is not, by itself, indicative of whether this case will proceed to trial more expeditiously in this court or in the Southern District of New York.[16] It is difficult to conclude that this case will go to trial more quickly in any other district because this court is familiar with the lengthy history of this case, and after the completion of expert discovery, trial is scheduled to commence on December 1, 2014. (ECF No. 663.)

Although the court does not opine about whether Batesville's motion to transfer, filed three years and eight months after the initiation of this case, is untimely, in light of the age of this case and the significant amount of litigation that has occurred since its inception, the interests of justice would not be served by transferring this matter to another court at this late stage in the

---

[16] Bascom v. Maxim Integrated Prods., Inc., 534 F.Supp.2d 700, 705 (W.D. Tex. 2008) ("Simply because one division has more judges than another does not mean the division is less congested, thus this argument fails to provide any weight in favor of transfer.").

case. This court, having presided over a contentious and lengthy fact discovery period, and decided three motions to dismiss, a motion for judgment on the pleadings, and five motions for summary judgment, is intimately familiar with this case. Pending on the court's docket, furthermore, is a motion for reconsideration of the court's summary judgment opinion filed by Batesville, which raises three issues for reconsideration. (ECF No. 647.) In light of the voluminous submissions by the parties related to the five summary judgment motions filed in this case, resolution of the motion for reconsideration by a court unfamiliar with this case would undoubtedly be an arduous and time-consuming task. There was no showing a trial in this case could be held more quickly in any other forum. The parties are engaged in expert discovery, which is scheduled to close on July 30, 2014, a <u>Daubert</u> hearing is scheduled for August 28, 2014, and trial is scheduled to commence on December 1, 2014. (ECF Nos. 662, 663.) The interests of justice, including ensuring the just and speedy resolution of all matters pending before the court, therefore, are served by *not* transferring this case to another district court. <u>See</u> <u>Belfer v. Minko</u>, Civ. Action No. 105-2473, 2007 WL 865677, at *3 (N.D. Ohio Mar. 15, 2007) ("This case has already proceeded in this courtroom [for nearly a year and a half], and in the interim it has amassed a considerable docket. The court is familiar with the parties and the issues at stake. This factor, perhaps above all, weighs inordinately in favor of denying a change of venue."). Accordingly, Batesville did not produce evidence sufficient to show court congestion warrants transfer of this case to the Southern District of New York to promote the expeditious resolution of this matter.

### ii. The local interest in deciding local controversies at home

Batesville argues: "as this case arose in New York and New York law applies, New York has a local interest in resolving this dispute." (ECF No. 652 at 5.) Both New York and

Pennsylvania have an interest in deciding the controversies in issue in this case. New York has an interest in regulating corporate conduct within its borders, and "Pennsylvania has an interest in 'protecting the rights of one of its residents.'" Argo, 2014 WL 2572804, at *3 (quoting Traa v. Marriott Corp., Civ. Action No. 05-4290, 2006 WL 2319182, at *6 (D.N.J. Aug. 9, 2006)); Radian Guaranty Inc. v. Bolen, Civ. Action No. 13-6197, 2014 WL 1757204, at * 12 (E.D. Pa. May 2, 2014) ("As for the local interest in deciding local controversies at home, this Court has a greater interest in deciding the case because it involves alleged injury sustained by a local Pennsylvania company."); Centimark Corp. v. Lavine, 2011 WL 2941214, at *7 (W.D. Pa. July 20, 2011) ("Lavine") ("Pennsylvania also has an interest in deciding local controversies which involve losses to a Pennsylvania corporation.") This factor, i.e., the local interest in deciding local controversies at home, is, therefore, neutral in light of Pennsylvania's interest in protecting the rights of its residents, and New York's interest in protecting the rights of its residents and regulating corporate conduct within its borders.[17]

---

[17] With respect to the protection of Batesville's rights, Batesville is a citizen of Indiana. Batesville, however, did not request this case be transferred to a court in Indiana, which would have an interest in protecting Batesville's rights. The Pontone defendants are citizens of New York, and, therefore, New York has an interest in protecting the rights of the Pontone defendants. This factor, i.e., the local interest in deciding local controversies at home, may weigh in the Pontone defendants' favor, but is not outweighed by the other public interest factors such as considerations of judicial efficiency.

The Pontone defendants argue that "where both states are found to have an interest in adjudicating a case, courts have held that the balance must tip in favor of the transferee State that was found to be the center of gravity of the actions giving rise to the litigation, which in this case is New York." (ECF No. 657 at 11 n.1) (citing In re Stillwater Mining Co., Civ. Action No. 02-2806, 2003 WL 21087953, at *12-14 (S.D.N.Y. May 12, 2003).) In re Stillwater, however, is distinguishable from this case. In Stillwater, which concerned a "widely dispersed class," the court determined that the plaintiffs' choice of forum "ha[d] little connection to [the] action." Id. at *5. Here, as discussed above, plaintiffs' choice of forum, Pennsylvania, has more than a "little connection" to this case because all three plaintiff-corporations were headquartered and managed in Pittsburgh, Pennsylvania. York Grp., Inc., 2012 WL 3127141, at *18.

### iii. The familiarity of the trial judge with the applicable state law in diversity cases

Batesville argues "[t]he Southern District of New York judges are obviously well versed in applicable New York law." (ECF No. 652 at 5.) The Pontone defendants argue:

> Because the majority of claims here require the application of New York law, with only one claim requiring application of Delaware law, and because there is no claim that requires the application of Pennsylvania law over New York law, this factor weights in favor of transfer under applicable precedent.

(ECF No. 657 at 17) (citing Stillwagon, 2013 WL 1180312, at *31; Advanced Automation, Inc. v. Nord Gear Corp., Civ. Action No. 02-410, 2002 U.S. Dist. LEXIS 16367 (E.D. Pa. Aug. 16, 2002).) Batesville and the Pontone defendants do not argue, however, "that the questions of state law [in this case] are complex, let alone that there is a substantive difference in the applicable tort laws of the two states."[18] Argo, 2014 WL 2572804, at *4. Furthermore, this case is distinguishable from the decisions cited by the Pontone defendants in support of its motion to transfer.

In Stillwagon, the case was in the pleadings stage when the court decided and granted the defendants' second motion to transfer. Stillwagon, 2013 WL 1180312, at *1. The court prior to ruling on the second motion to transfer, decided a motion to dismiss the complaint, and a motion to dismiss counterclaims was pending before the court. Id. Additionally, at the time the second motion to transfer was decided, the case was one year and five months old, and there were sixty-nine documents entered on the docket in that case. Stillwagon v. Innsbrook Golf & Marina, LLC,

---

[18] As the court noted in its opinion on the parties' summary judgment motions: the parties agree that no difference exists between the laws of Pennsylvania and New York with respect to the tort of interfering with existing contractual relations; the parties agree that with respect to claims for unjust enrichment, no differences relating to these claims exist between the laws of Pennsylvania and New York; and the parties stipulated that their unfair competition claims are governed by New York law. York Grp., Inc. v. Pontone, Civ. Action No. 10-1078, 2014 WL 896632, at *16, 20, 21 (W.D. Pa. Mar. 6, 2014).

Civ. Action No. 11-1338 (W.D. Pa. Oct. 20, 2011). In <u>Advanced Automation</u>, the case at the time the motion to transfer was decided was just short of being seven months old, there were nine entries on the court's docket, and the court had not decided any substantive motions other than the motion to transfer. <u>Advanced Automation v. Nord Gear Corp.</u>, Civ. Action No. 02-410 (E.D. Pa. Jan. 1, 25, 2002).

Unlike <u>Stillwagon</u> and <u>Advanced Automation</u>, this case is well beyond the pleadings stage, and, as any court would be after presiding over a case for nearly four years, which included presiding over a contentious fact discovery period and deciding three motions to dismiss, a motion for judgment on the pleadings, and five motions for summary judgment, the court is intimately familiar with this case, which includes familiarity with the New York law applicable to a majority of the claims asserted in this case. In stark contrast to the dockets in <u>Stillwagon</u> and <u>Advanced Automation</u>, there are currently at least 701 entries on the court's docket in this case. Under those circumstances, Batesville did not meet its burden to show this factor, i.e., the familiarity of the trial judge with the applicable state law in diversity cases, weighs in favor of transfer. This factor is, therefore, neutral in the court's analysis because although New York law is applicable to most claims asserted in this case, this court is familiar with the applicable New York law having applied it to resolve the parties' motions for summary judgment.

### iv.     The public polices of the fora

In the court's opinion addressing the parties' summary judgment motions, it held that with respect to the Pontone defendants' counterclaim for intrusion upon seclusion, a claim recognized in Pennsylvania but not New York, "Pennsylvania has no interest in imposing liability on its own businesses for engaging in extraterritorial conduct that was not tortious where

performed." (ECF No. 642 at 59.) The Pontone defendants argue that this excerpt of the court's opinion

> indisputably shows that if Pennsylvania has no interest in adjudicating disputes relating to conduct that violates its own state laws — simply because in this case the conduct was directed to residents outside the state — then it follows that Pennsylvania could certainly have no interest in adjudicating any other type of dispute relating to conduct that occurred entirely outside of its state, as the remainder of the conduct at issue in this action.

(ECF No. 657 at 18-19.) The excerpt of the court's opinion relied upon by the Pontone defendants is taken out of the context of a *choice of law* analysis and is not persuasive to show that "Pennsylvania could certainly have no interest in adjudicating any other type of dispute relating to conduct that occurred entirely outside of its state." (Id. at 19.) As discussed above in the analysis with respect to transfer of venue issues, Pennsylvania has an interest in protecting the rights of its citizens. Argo, 2014 WL 2572804, at *3. The Pontone defendants' arguments with respect to the public policies of the fora are not persuasive and do not weigh in favor of transfer.

### v. Other practical considerations that could make the trial easy, expeditious, or inexpensive

As discussed above, the Pontone defendants' waived their right to object to venue in this court, and, even if they did not waive their right to object to venue in this court, the forum selection clauses under Atlantic Marine only permit consideration with respect to their motion to transfer of the public interest factors, which in this case do not warrant transfer of the claims involving the Pontone defendants to New York. Section 1404(a) authorizes only the transfer of an *entire* civil action, not individual claims. 28 U.S. § 1404(a); Cain v. N.Y. State Bd. of Elections, 630 F.Supp. 221, 226 (E.D.N.Y. 1986) ("§ 1404(a) authorizes transfer only of an entire action, not of individual claims."); 15 CHARLES ALAN WRIGHT, ARTHUR R. MILLER &

EDWARD H. COOPER, FEDERAL PRACTICE AND PROCEDURE § 3846 (4TH ED. 2013) ("A transfer under Section 1404(a) must be complete. That is, the transferor court cannot transfer the case for some purposes while retaining jurisdiction over other aspects for some other purpose."). It follows that—even if Batesville convinced this court transfer of the claims asserted by and against Batesville is appropriate—the court would have to sever claims asserted by and against Batesville and transfer them, i.e., transfer the entire case created by the severance of the claims asserted by and against Batesville, to the Southern District of New York. See Cain, 630 F.Supp. at 226. Severance and transfer in this case, however, would not serve the interests of justice and make trial easy, expeditious, or inexpensive; rather, claims with mutual bases in fact that rely upon the same witness testimony and documentary evidence would be simultaneously tried in two different forums. Severance and transfer of the claims asserted by and against Batesville undoubtedly would increase the costs of litigation for the parties and witnesses involved, and would place an undue burden on the judiciary to adjudicate claims with mutual bases in fact in two different forums.[19] Accordingly, severance and transfer of the claims asserted by and against Batesville do not serve the interests of justice in this case. See Sunbelt Corp. v. Nobel, Denton, & Assocs., Inc., 5 F.3d 28, 34 (3d Cir. 1993) ("To grant severance here would place each defendant in the position of being able to defend by asserting the absent party's negligence. We refuse to encourage a result which in our view hampers rather than furthers the administration of justice. We conclude here that it would not be consistent with a sound exercise of discretion for the district court to grant severance in this case. Thus, contrary to Noble Denton's request, we will

---

[19] Notably, the parties have not briefed whether venue would be appropriate in the Southern District of New York if plaintiffs proceeded only against Batesville in that court. Such an analysis is required under § 1404(a). The court need not decide that issue because in any event, severance and transfer of the claims asserted by and against Batesville in this forum would not promote the easy, expeditious, and inexpensive resolution of this case.

not instruct the district court to grant severance."); S. Appalachian Biodiversity Project v. U.S. Forest Serv., 162 F.Supp.2d 1365, 1367 (N.D. Ga. 2001) ("Efficiency alone suggests that this issue should be resolved by one court as opposed to two, and the plaintiff should not be forced to unnecessarily litigate this case in two different courts.").

### 3. Conclusion with respect to Batesville's motion to transfer

As discussed above, a transfer "is not to be liberally granted." Shutte, 431 F.2d at 25 Although many of the operative facts occurred in New York, New York, a fact that weighs in favor of transfer, the other private and public interest factors including the court's familiarity with the facts and applicable law, do not weigh strongly in favor of transfer.

### IV.    Conclusion

For the reasons set forth herein, the Pontone defendants' motion to transfer (ECF No. 654) and Batesville's motion to transfer (ECF No. 651) will be DENIED. Batesville did not meet its burden to show that transfer is warranted in this case. Batesville's motion to transfer will, therefore, be denied. The court in deciding the motions to transfer reviewed and considered all submissions made by the parties, including the voluminous submissions by the Pontone defendants. Based upon the record before the court, a hearing with respect to the motions to transfer is not required. Batesville's motion for hearing (ECF No. 653) will be DENIED. An appropriate order will be entered.[20]

BY THE COURT,

Dated: July 28, 2014                    /s/ JOY FLOWERS CONTI
                                        Joy Flowers Conti
                                        Chief United States District Judge

---

[20] The court in an order dated July 9, 2014, denied plaintiffs' cross-motion for sanctions, which they improperly and prematurely asserted in their sur-reply brief. (ECF No. 701.) Further acrimonious motion practice by the parties is not helpful to moving this case to resolution.