**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| THE YORK GROUP, INC., MILSO INDUSTRIES CORPORATION, and MATTHEWS INTERNATIONAL CORPORATION, | ) ) ) ) ) |
| Plaintiffs, | ) ) |
| v. | ) )    Civil Action No. 10-1078 |
| SCOTT PONTONE, HARRY PONTONE, BATESVILLE CASKET COMPANY, INC., and PONTONE CASKET COMPANY, LLC, | ) ) ) ) ) |
| Defendants. | ) |

## OPINION

CONTI, Chief District Judge

### I. Introduction

Pending before the court are six motions[1] relating to alleged violations of a protective order issued in this case on February 4, 2011 (the "protective order"). (ECF No. 69.) Defendants Scott Pontone and Pontone Casket Company (together, the "Pontone defendants") and Batesville Casket Company, Inc. ("Batesville") allege plaintiffs The York Group, Inc. ("York"), Milso Industries Corporation ("Milso"), and Matthews International Corporation (collectively with York and Milso, "plaintiffs") violated the protective order when they filed under seal two documents as exhibits to a motion to dismiss in a case filed by Scott Pontone against York and Milso in the Court of Chancery of the State of Delaware, Scott Pontone v. Milso Industries Corp. and The York Grp., Inc., Civ. Action No. 8842-VCP (Del. Ch. Mar. 18, 2014) ("Scott Pontone's

---

[1] Motion to Amend/Correct Order ("motion to amend the protective order") (ECF No. 609); Motion to Seal (ECF No. 611); Motion for Contempt (ECF No. 619); Amended Motion to Expedite Discovery (ECF No. 614); Motion to Compel and for Costs (ECF No. 627); and Motion to Seal (ECF No. 628).

Delaware Case"), and disclosed "highly confidential" information in their submissions filed on the docket in this case. This opinion addresses the Pontone defendants' allegations and the submissions by the parties with respect to the protective order.

## II. <u>Procedural History</u>[2]

In this diversity action initiated by plaintiffs on August 16, 2010, the court has overseen a contentious and lengthy fact discovery period and, on March 6, 2014, decided the parties' voluminous cross-motions for summary judgment. (ECF Nos. 642, 643.) This case is currently in expert discovery and is scheduled for trial on December 1, 2014. (ECF No. 663.)

On October 15, 2013, plaintiffs filed a motion to amend the protective order. (ECF No. 609.) On October 23, 2013, the Pontone defendants filed a motion to expedite discovery with respect to plaintiffs' alleged violations of the protective order (ECF No. 610) and a motion to seal plaintiffs' motion to amend the protective order (the "first motion to seal") (ECF No. 611.) On October 28, 2013, plaintiffs filed an omnibus response in opposition to the Pontone defendants' motion to expedite discovery and motion to seal. (ECF No. 612.) On November 7, 2013, the Pontone defendants filed a motion for contempt against plaintiffs arguing, among other things, that plaintiffs violated the protective order with respect to a motion to dismiss filed in the Scott Pontone Delaware case and the disclosure of "highly confidential" information in their submissions in this case. (ECF No. 619.)[3] On November 7, 2013, the Pontone defendants filed an amended motion to expedite discovery with respect to plaintiffs' alleged violations of the

---

[2] The procedural history section of this opinion sets forth only the procedural history relevant to the disposition of the motions listed in footnote 1 <u>supra</u>.

[3] The motion for contempt was originally filed on November 7, 2013. (ECF No. 613.) On November 13, 2013, the Pontone defendants filed an erratum with respect to the motion for contempt. (ECF No. 619.)

protective order (the "amended motion to expedite discovery"). (ECF No. 614.)[4] On the same day, the Pontone defendants filed a response in opposition to plaintiffs' motion to amend the protective order. (ECF No. 615.) On November 13, 2013, the Pontone defendants with leave of court filed a reply brief with respect to their first motion to seal. (ECF No. 618.) On the same day, the Pontone defendants filed an erratum with respect to the motion for contempt. (ECF No. 619.)

On November 15, 2013, Batesville filed a response to plaintiffs' motion to amend the protective order and a motion for joinder with respect to the Pontone defendants' motion for contempt.[5] (ECF Nos. 620, 621.) On the same day, plaintiffs filed a response in opposition to the Pontone defendants' motion to expedite discovery with respect to plaintiffs' alleged violations of the protective order. (ECF No. 622.) On November 26, 2013, plaintiffs with leave of court filed a reply brief with respect to their motion to amend the protective order. (ECF No. 626.) On December 2, 2013, plaintiffs filed a response in opposition to the motion for contempt. (ECF No. 627.) Plaintiffs, as part of their response to the motion for contempt, requested the court to compel the production of an agreement dated April 7, 2013, between Scott Pontone and Batesville and requested their costs for responding to the motion for contempt. (Id.)

On December 4, 2013, the Pontone defendants filed a motion to seal (the "second motion to seal") plaintiffs' response in opposition to the motion for contempt. (ECF No. 628.) On December 13, 2013, plaintiffs filed a response in opposition to the second motion to seal. (ECF No. 631.) On December 16, 2013, the Pontone defendants filed a response in opposition to the

---

[4] On June 2014, the court denied as moot the motion to expedite discovery (ECF No. 610) in light of the amended motion to expedite discovery (ECF No. 614).

[5] On June 4, 2014, the court granted Batesville's motion for joinder with respect to the Pontone defendants' motion for contempt.

motion to compel contained in plaintiffs' response to the motion for contempt. (ECF No. 633.)[6] On December 16, 2013, Batesville filed a response in opposition to the motion to compel contained in plaintiffs' response to the motion for contempt. (ECF No. 637.) On December 23, 2013, the Pontone defendants with leave of court filed a reply brief in further support of their motion for contempt. (ECF No. 638.)

The following motions, which relate to plaintiffs' alleged breaches of the protective order, having been fully briefed are now ripe to be decided by the court:

- Plaintiffs' Motion to Amend the Protective Order (ECF No. 609);

- Pontone defendants' First Motion to Seal (ECF No. 611);

- Pontone defendants' Motion for Contempt (ECF No. 619);

- Pontone defendants' Amended Motion to Expedite Discovery (ECF No. 614);

- Plaintiffs' Motion to Compel and for Costs (ECF No. 627); and

- Pontone defendants' Second Motion to Seal (ECF No. 628).

### III. Factual Background

### A. The Protective Order

Paragraph two of the protective order provides:

2. This Stipulated Protective Order shall govern the disclosure and use of "Confidential" information and documents and "Attorneys Eyes Only" information and documents, as defined in Paragraph 5, produced in connection with this litigation (collectively, "Protected Material"). All information which is - or has been - produced or discovered in this litigation, regardless of whether designated "Confidential" or "Attorneys' Eyes Only," **shall be used solely for the prosecution or defense of this litigation** unless the information is available to the general public without a breach of the terms of this Stipulated Protective Order. The measures designated by the parties in this Stipulated Protective Order are reasonable and will not prejudice anyone or unduly burden the Court.

---

[6] On June 5, 2014, the Pontone defendants with leave of court filed an unredacted version of their response in opposition to the motion to compel. (ECF No. 688.)

(ECF No. 69 ¶ 2 (emphasis added).) With respect to the disclosure of protected information under the protective order, paragraphs nine, ten and eleven of the protective order, in pertinent part, provide:

> 9. Protected Material shall not be exhibited, disseminated, copied, or in any way communicated to anyone for any purpose whatsoever, other than in conjunction with the above-captioned litigation. Except as provided for in this Stipulated Protective Order, the parties shall keep all Protected Material from all persons except as provided for by the terms of Stipulated Protective Order.
>
> 10. Neither the receiving party, its counsel, nor its representatives shall disclose documents designated as CONFIDENTIAL as defined by paragraph 5(a) herein, other than to the following persons (hereinafter referred to as "Qualified Persons - Confidential"):
>
> …
>
> > (e) Designated representatives of Plaintiffs assigned to and necessary to assist counsel in the prosecution of this litigation, who expressly agree to comply with the terms of this Stipulated Protective Order, and whose identity(ies) are first disclosed to the party that produced the subject Protected Material;
> >
> > (f) Plaintiffs' designated counsel of record in this action and employees of Plaintiffs' counsel acting at the direction of counsel, and assigned to and necessary to assist such counsel in the preparation or trial of this action;
> >
> > (g) All attorneys for the parties in this action, including in-house attorneys, and their assistants, associates, paralegals, clerks, stenographic personnel, and other individuals specifically acting at the direction of counsel, and assigned to and necessary to assist such counsel in the preparation or trial of this action[.]
>
> …
>
> 11. The parties and their designated representatives are precluded from sharing and/or disclosing CONFIDENTIAL information or documents to anyone other than a "Qualified Person - Confidential" as defined in Paragraph 10, herein. Accordingly, the parties and their designated representatives expressly agree to maintain the confidentiality associated with those documents designated as CONFIDENTIAL and agree that they will not disclose or otherwise share such information with anyone other than a "Qualified Person - Confidential" at any time

(Id. ¶¶ 9-11.)

With respect to the disclosure of documents labeled as "Attorneys' Eyes Only," paragraph twelve of the protective order, in pertinent part, provides:

12. Upon receipt of documents designated as ATTORNEYS EYES ONLY, as defined by paragraphs 5(b)(i) and (ll) herein, counsel for the receiving party shall not disclose such documents other than to the following persons (hereinafter referred to as "Qualified Persons - Attorneys Eyes Only"):

…

(c) Plaintiffs' designated counsel of record in this action and other attorneys at the firm of such counsel[.]

(Id. ¶ 12.)

Paragraph thirteen of the protective order provides further instruction with respect to whom the documents labeled "Confidential" and "Attorneys' Eyes Only" may be disclosed. (Id. ¶ 13.) Paragraph thirteen provides:

13. Disclosure of CONFIDENTIAL or ATTORNEYS EYES ONLY information and documents shall be made to persons identified in Paragraphs 10 and 12 above, as applicable, **only as necessary for this litigation**, and, with respect to individuals identified in subparagraphs 10(a), (c), (e), (h) and (D and 12(1), only after the person to whom disclosure is made has been informed of this Stipulated Protective Order, and has agreed in writing to be bound by it, by signing the form of acknowledgment attached to this Stipulated Protective Order as Exhibit A - Acknowledgment. The terms of this Stipulated Protective Order shall be explained to such persons by the persons disclosing the Protected Material. The executed acknowledgment shall be retained by counsel disclosing the Protected Material. Protected Material shall not be disclosed to any person in any manner not specified in this Protective Order.

(ECF No. 69 ¶ 13 (emphasis added).)

Paragraph eight of the protective order sets forth a process for the parties to use to challenge designations of the documents labeled "Confidential" or "Attorneys' Eyes Only." (ECF No. 69 ¶ 8.) Paragraph eight provides:

A party challenging a confidentiality designation must request in writing that the designation be changed. The writing shall set forth the receiving party's basis for the challenge. The parties shall then meet and confer within 10 days of service of the written challenge in a good faith effort to resolve the challenge. If the parties are unable to resolve the challenge through the meet and confer, the challenging party may, within 10 days of the meet and confer, proceed to move the Court to resolve the dispute. Until the Court rules on the challenge, all parties shall continue to afford the material in question the level of protection to which it would be entitled under the challenged designation.

(ECF No. 69 ¶ 8.)

**B. Harry Pontone's Delaware Case**

On June 12, 2012, defendant Harry Pontone filed a complaint in the Court of Chancery of the State of Delaware against Milso Industries Corporation and The York Group, Inc. seeking advancement, indemnification, and attorneys' fees, and asserting a claim for breach of contract. Harry Pontone v. Milso Industries Corp. and The York Grp., Inc., Civ. Action No. 7615-VCP (Del. Ch. June 12, 2012) ("Harry Pontone's Delaware Case"); (ECF No. 609-1.) In July 2012, Harry Pontone, Milso, and York agreed to the following stipulation:

> [M]aterial designated by either Plaintiffs or Harry Pontone as "Confidential" or "Attorneys' Eyes Only," including any such documents that have been filed by either Plaintiffs or Harry Pontone in the Western District of Pennsylvania under seal in the Underlying Action may be submitted to the Court and/or the Special Master in the Delaware Action, and be disclosed to Harry Pontone's counsel of record in the Delaware Action. It is further stipulated and agreed that such Protected Material will be designated "Confidential Discovery Material" pursuant to the Stipulation and Order for the Production and Exchange of Confidential Information entered on May 13, 2013 in the Delaware Action and may only be used by Milso to object to fees and expenses for which Harry Pontone seeks to be advanced or indemnified and/or by Harry Pontone to address, challenge or rebut any such objection by Milso.

(ECF Nos. 609-2 at 3; 609-3 at 2.)

**C. Scott Pontone's Delaware Case**

On August 26, 2013, Scott Pontone filed a complaint in the Court of Chancery of the State of Delaware against Milso and York seeking advancement and attorneys' fees and asserting a claim for breach of contract. (ECF No. 609 ¶ 4; ECF No. 609-1; ECF No. 615 at 1.) Milso and York moved to dismiss Scott Pontone's complaint, arguing Scott Pontone was not entitled to advancement of his attorneys' fees because he did not have standing to seek advancement and had not incurred any fees or expenses. (ECF No. 609-5; ECF No. 609 ¶ 9.) Milso's and York's argument was based upon their position that Batesville is required to advance and indemnify

7

Scott Pontone for any fees or expenses pursuant to a consulting agreement entered into between Scott Pontone and Batesville (the "consulting agreement"). (ECF No. 609 ¶ 10.) In support of their argument, Milso and York filed a redacted version of their motion to dismiss with the court. (Id.) Milso and York filed under seal an unredacted version of the motion to dismiss. (Id.) Attached under seal to the unredacted version of the motion to dismiss was a copy of the consulting agreement, together with attached customer lists, among other exhibits, and a transcript of the deposition of Scott Pontone taken in relation to this case. (Id.)

In this case, the consulting agreement was designated "Attorneys' Eyes Only" and the Pontone defendants attempted to designate the entirety of Scott Pontone's deposition as "Attorneys' Eyes Only" and "Confidential." (ECF No. 619.) Counsel for Scott Pontone requested that counsel for York and Milso in the Scott Pontone Delaware case withdraw the consulting agreement and the transcript of Scott Pontone's deposition arguing the use of those documents in Scott Pontone's Delaware case violated the protective order entered in this litigation. (ECF No. 609-6.) As of the date of this opinion, counsel for York and Milso in the Scott Pontone Delaware case have not complied with counsel for Scott Pontone's request.

**D. Attorneys for Milso and York**

In this case, plaintiffs, including Milso and York, are represented by Reed Smith, LLP ("Reed Smith"). The following attorneys of Reed Smith appear or have appeared on behalf of plaintiffs in this case: Brian T. Himmel, Danielle J. Marlow, David B. Fawcett, III, Steven I. Cooper, and W. Thomas McGough, Jr. In Scott Pontone's Delaware case, Milso and York are represented by Reed Smith attorneys Brian Rostocki ("Rostocki") and John Cordrey ("Cordrey"). (ECF No. 629 at 6.)

**IV. Motion for Contempt**

The Pontone defendants joined by Batesville seek an order of contempt, pursuant to Federal Rule of Civil Procedure 37(b)(2) and 18 U.S.C. § 401(3), based upon counsel for plaintiffs in this case (1) providing counsel for Milso and York in the Scott Pontone Delaware case the consulting agreement and a transcript of Scott Pontone's deposition taken in connection with this case, which resulted in those documents being filed under seal in the Scott Pontone Delaware case; and (2) filing in this court "highly confidential information obtained by Plaintiffs under the protection of the Protective Order in this case and Rule 5.1 of the Delaware Court of Chancery rules." (ECF No. 619, 621.) Plaintiffs argue the motion for contempt is baseless because the Pontone defendants have not shown by clear and convincing evidence that plaintiffs intentionally violated the protective order or the alleged violations resulted in "significant prejudice to the Pontone defendants." (ECF No. 627.)

## A. Applicable Law

A party must prove three elements by clear and convincing evidence to establish that an opposing party is liable for civil contempt: (1) a valid order of the court existed; (2) the opposing party had knowledge of the order; and (3) the opposing party disobeyed the order. John T. ex. rel. Paul T. v. Del. Cnty., 318 F.3d 545, 552 (3d Cir. 2003) (citing Harris v. Phila., 47 F.3d 1342, 1349 (3d Cir. 1995)); see Roe v. Operation Rescue, 54 F.3d 133, 137 (3d Cir. 1995). The elements of civil contempt must be proved by clear and convincing evidence, and ambiguities must be resolved in favor of the party charged with contempt. John T., 318 F.3d at 552.

A plaintiff, however, is not required to prove that the defendant willfully violated a court order in order to establish civil contempt. Robin Woods Inc. v. Woods, 28 F.3d 396, 400 (3d Cir. 1994). "'[W]illfulness is not a necessary element of civil contempt,' and, accordingly, that 'evidence ... regarding ... good faith does not bar the conclusion ... that [the defendant] acted in contempt.'" Id. at 398 (quoting Harley-Davidson, Inc. v. Morris, 19 F.3d 142, 148-49 (3d

Cir.1994)). Indeed, "good faith is not a defense to civil contempt." Robin Woods, 28 F.3d at 399.

Civil contempt sanctions are remedial not punitive in nature. As such, "[d]istrict courts hearing civil contempt proceedings are afforded broad discretion to fashion a sanction that will achieve full remedial relief." John T., 318 F.3d at 554 (citing McComb v. Jacksonville Paper, 336 U.S. 187, 193-94 (1949)). Often, the district court's discretion involves ordering payment for the costs of past non-compliance. John T., 318 F.3d at 554 ("'Civil contempt is remedial in nature, serving to coerce compliance with a court order *or to compensate the other party for losses sustained due to noncompliance.*'") (quoting United States v. Pozsgai, 999 F.2d 719 (3d Cir. 1993) (emphasis in original)).

Attorneys' fees may be awarded against a party that is held in contempt. Robin Woods, 28 F.3d 396 at 400. The Third Circuit Court of Appeals recognized in Robin Woods:

> "It matters not whether the disobedience is willful[;] the cost of bringing the violation to the attention of the court is part of the damages suffered by the prevailing party and those costs would reduce any benefits gained by the prevailing party from the court's violated order. Because damages assessed in civil contempt cases are oftentimes compensatory (instead of coercive) the mental state of the violator should not determine the level of compensation due."
>
> …
>
> Only with an award of attorneys' fees can [the plaintiff] be restored to the position it would have occupied had [the defendants] complied with the district court's injunction. Accordingly, accepting both the district court's findings regarding good faith and advice of counsel and the [defendants'] assertion that they intended no harm to [the plaintiff], we find no basis for disturbing the award of attorneys' fees.

Id. (quoting Cook v. Ochsner Found. Hosp., 559 F.2d 270, 272 (5th Cir. 1977) (emphasis added)).

**B. Discussion**

**1. Alleged Violations of the Protective Order**

i.  **Disclosure of the consulting agreement and transcript of Scott Pontone's deposition to Rostocki and Cordrey**

Here, plaintiffs do not dispute that (1) a valid order of the court existed, i.e., the protective order; and (2) they had knowledge of the protective order. With respect to the third element of civil contempt, i.e., plaintiffs violated the court order, the Pontone defendants showed by clear and convincing evidence that plaintiffs violated the protective order by their counsel in this case disclosing the consulting agreement to Rostocki and Cordrey, which resulted in Rostocki and Cordrey filing under seal on the docket in the Scott Pontone Delaware case the consulting agreement. The Pontone defendants did not, however, show by clear and convincing evidence that plaintiffs violated the protective order by disclosing a transcript of Scott Pontone's deposition to Rostocki and Cordrey because the Pontone defendants failed to comply with the protective order by designating the entire deposition as "Protected Material," and not identifying specific pages and lines of the transcript as "Protected Material."

a.  **The consulting agreement**

There is no dispute in this case that the consulting agreement is designated "Attorneys' Eyes Only" meaning that document is considered "Protected Material" under the protective order. (ECF No. 69 ¶ 2.) Pursuant to the protective order, Protected Material "shall be used solely for the prosecution or defense of **this litigation** unless the information is available to the general public without a breach of the terms of this Stipulated Protective Order[,]" and "shall not be exhibited, disseminated, copied, or in any way communicated to anyone for any purpose whatsoever, **other than in conjunction with the above-captioned litigation**." (ECF No. 69 ¶¶ 2, 9) (emphasis added.) Paragraphs two and nine of the protective order provide that permissible disclosure is limited to disclosure related to the purposes of prosecuting or defending **this** case, i.e., the above-captioned litigation. Based upon the submissions of the parties, Rostocki and

Cordrey are attorneys in Reed Smith's Delaware office, and plaintiffs did not argue that Rostocki or Cordrey provided assistance to them in *this* case or that their counsel in this case disclosed the consulting agreement to Rostocki and Cordrey for any purpose related to this litigation. Counsel for plaintiffs disclosing the consulting agreement to Rostocki and Cordrey, who are not counsel of record in this case, led to the subsequent filing and **use** of that document in the Scott Pontone Delaware case and violated the express terms of the protective order.

Plaintiffs argue that the disclosure of the consulting agreement was not a breach of the protective order because (1) that document was filed under seal in Delaware, and (2) the protective order permitted plaintiffs' counsel to disclose documents designated "confidential" or "attorneys' eyes only" to counsel at Reed Smith "working on the closely related Delaware actions." (ECF No. 626-27.)[7] With respect to plaintiffs' first argument, the protective order expressly provides that the use of Protected Material, which includes the consulting agreement, shall be limited to **use** in *this* case. (ECF No. 69 ¶¶ 2, 9, 13.) Plaintiffs, therefore, violated the protective order when their counsel in this case disclosed the consulting agreement to Rostocki and Cordrey for purposes unrelated to this case. Whether the consulting agreement was filed under seal in Delaware may be relevant to the extent of the harm suffered by the Pontone defendants by the disclosure, but does not factor into an analysis about whether the protective order was violated in the first instance by plaintiffs using the consulting agreement for a purpose unrelated to this case.

With respect to plaintiffs' second argument, i.e., the disclosure of the consulting agreement to Reed Smith attorneys Rostocki and Cordrey was permissible under the protective

---

[7]    Plaintiffs also argue that to the extent they violated the protective order, the violation was inadvertent. Plaintiffs' argument, however, is not persuasive. As the court noted in <u>Robin Woods</u>, "good faith is not a defense to civil contempt," and a party is not required to prove the opposing party willfully violated a court order in order to establish civil contempt. <u>Robin Woods</u>, 28 F.3d at 399-400.

order, the plain language of the protective order refutes this argument. Plaintiffs are correct that the protective order contemplates disclosure of protected material to persons other than counsel of record for the parties. (See ECF No. 69 ¶¶ 10(e)-(g), 12(c).) Paragraph ten of the protective order provides that documents designated confidential may be disclosed to, among other persons:

> (f) Plaintiffs' designated counsel of record in this action and employees of Plaintiffs' counsel acting at the direction of counsel, and assigned to and necessary to assist such counsel in the preparation or trial of this action;
> [and]
> (g) All attorneys for the parties in this action, including in-house attorneys, and their assistants, associates, paralegals, clerks, stenographic personnel, and other individuals specifically acting at the direction of counsel, and assigned to and necessary to assist such counsel in the preparation or trial of this action[.]

(ECF No. 69 ¶ 10.) Paragraph twelve of the protective order provides that documents designated Attorneys' Eyes Only may be disclosed to, among other persons:

> (c) Plaintiffs' designated counsel of record in this action and other attorneys at the firm of such counsel[.]

(ECF No. 69 ¶ 12.) Paragraph thirteen of the protective order, however, limits permissible disclosure of Protected Materials to situations in which disclosure is "necessary for **this litigation**." (Id. ¶ 13) (emphasis added.) Pursuant to the plain language of the protective order, counsel for plaintiffs were permitted to disclose to Rostocki and Cordrey the consulting agreement because Rostocki and Cordrey are "other attorneys at the firm of [plaintiffs'] counsel." (Id. ¶ 12.) Plaintiffs were not permitted, however, to disclose the consulting agreement to Rostocki and Cordrey for any reason that was not "necessary for this litigation," and Rostocki and Cordrey were not permitted to *use* the consulting agreement for any purpose not "necessary for **this** litigation." (Id. ¶ 13 (emphasis added).) Based upon the submissions of the parties, counsel for plaintiffs disclosed the consulting agreement to Rostocki and Cordrey, and the consulting agreement was subsequently used to defend the Scott Pontone Delaware case, i.e., the consulting agreement was attached to a motion to dismiss in that case. Plaintiffs do not argue that

they disclosed the consulting agreement to Rostocki and Cordrey for any reason related to **this** litigation, and it is undisputed that Rostocki and Cordrey used the consulting agreement to defend the Scott Pontone Delaware case. Accordingly, counsel for plaintiffs' disclosure of the consulting agreement to Rostocki and Cordrey and the subsequent use of the consulting agreement in the Scott Pontone Delaware case constitute violations of the protective order. The Pontone defendants established by clear and convincing evidence that plaintiffs violated the protective order. Accordingly, plaintiffs are in contempt of an order of this court, i.e., the protective order, and the court must determine what, if any, sanctions should be imposed upon plaintiffs in this case.

### b. The transcript of Scott Pontone's deposition

Plaintiffs argue Scott Pontone's deposition is not confidential because "the Pontone Defendants have at no point ever provided specific paragraph and line designations from that transcript," which "is required under the Stipulated Protective Order in order to maintain that confidentiality designation after 10 days." (ECF No. 631 at 2-3.) Paragraph 6 of the protective order provides:

> 6. A party or non-party shall designate all Protected Material disclosed during any deposition in this matter as CONFIDENTIAL or ATTORNEY EYES ONLY by notifying all parties during the deposition of the specific pages and lines of the transcript which contain Protected Material. If a party or non-party asserts at the deposition that it intends to designate portions of the testimony as CONFIDENTIAL or ATTORNEYS EYES ONLY, but it is not practical to make specific designations before the conclusion of the deposition, then the designating party shall have ten (10) days from its receipt of the transcript to provide written notice to the parties of the specific pages and lines of the transcript which contain Protected Material. Each party shall attach a copy of such written notice to the face of the transcript and each copy thereof in its possession, custody or control. If the right to designate testimony following the deposition is invoked, all parties shall treat the entire transcript as subject to the level of protection requested by the designating party until the earlier of receipt of the notice of designations or expiration of the ten (10) day period following receipt of the transcript.

(ECF No. 69 ¶ 6.) The Pontone defendants did not produce evidence to show that in accordance with the protective order they provided plaintiffs "written notice…of the specific pages and lines of the transcript which contain Protected Material." (Id.) Under those circumstances, the court cannot conclude that the transcript of Scott Pontone's deposition was "confidential" material subject to the protective order. The Pontone defendants, therefore, failed to satisfy their burden to show by clear and convincing evidence that plaintiffs violated the protective order by disclosing the transcript of Scott Pontone's deposition to Rostocki and Cordrey. The Pontone defendants' motion for contempt will be denied with respect to counsel for plaintiffs disclosing the transcript of Scott Pontone's deposition to Rostocki and Cordrey, which led to Rostocki and Cordrey using the transcript of Scott Pontone's deposition to defend the Scott Pontone Delaware case.

ii.     **Plaintiffs filing in this court highly confidential information obtained by plaintiffs under the protection of the protective order and Delaware confidentiality provisions**

The Pontone defendants joined by Batesville argue that plaintiffs violated the protective order by filing on the docket in this case "highly confidential" information that constitutes Protected Material in this case and from a sealed filing in the Scott Pontone Delaware case. (ECF No. 619 at 6.) Related to this argument, the Pontone defendants filed two motions to seal with respect to plaintiffs' motion to amend the protective order (ECF No. 611) and response in opposition to the motion for contempt (ECF No. 628). Based upon the Pontone defendants' proposed redactions to plaintiffs' motion to amend the protective order, it appears the "highly confidential information" plaintiffs refer to in their filings in this case is that: (1) Batesville pursuant to the consulting agreement has a mandatory obligation to pay Scott Pontone's attorneys' fees in this litigation; (2) Batesville has paid Scott Pontone's legal fees for years; (3) the customer lists attached to the consulting agreement list all funeral homes in the New York

15

Metropolitan region; and (4) reference to a loan agreement between Scott Pontone and Batesville dated April 7, 2013. Each of these alleged violations of a court order and whether the information should be filed under seal will be addressed below.

   a. **Pursuant to the consulting agreement, Batesville has a mandatory obligation to pay Scott Pontone's attorneys' fees in this litigation.**

As discussed above, a party must prove three elements by clear and convincing evidence to establish that an opposing party is liable for civil contempt: (1) a valid order of the court existed; (2) the opposing party had knowledge of the order; and (3) the opposing party disobeyed the order. John T., 318 F.3d at 552. Here, plaintiffs do not dispute that (1) a valid order of the court existed, i.e., the protective order; and (2) they had knowledge of the protective order, and the consulting agreement is designated Protected Material under the protective order. Plaintiffs argue, however, that they did not violate the protective order by referencing the consulting agreement, which "was not attached to Plaintiffs' submission, was only referred to generally and was neither quoted nor otherwise disclosed," because "*the Pontone Defendants themselves have repeatedly referenced the Consulting Agreement in their filings.*" (ECF No. 627 at 10 (emphasis in original).) The basis for the Pontone defendants' motion for contempt relating to the consulting agreement does not appear to be plaintiffs' mere *reference* to the consulting agreement; rather, the Pontone defendants joined by Batesville seem to object to the disclosure of the *contents* of the consulting agreement. Based upon plaintiffs' reference to the contents of the consulting agreement in their submissions filed publicly on this court's docket, the court agrees with the Pontone defendants that plaintiffs violated the protective order by failing to "maintain the confidentiality" of the consulting agreement. (ECF No. 69 at 1.) Accordingly, because plaintiffs disclosed the content of Protected Material in their motion to amend the protective order (ECF No. 609) and response in opposition to the motion for contempt (ECF No.

627), the Pontone defendants' motion to seal will be granted[8] with respect to plaintiffs' references to the contents of the consulting agreement in those documents. Appropriate sanctions to be imposed upon plaintiffs based upon their violation of the protective order will be discussed below.

### b. Batesville has paid Scott Pontone's legal fees for years.

Plaintiffs do not dispute that (1) a valid order of the court existed, i.e., the protective order; and (2) they had knowledge of the protective order. Plaintiffs argue, however, that they did not violate the protective order by including in their submissions that Batesville paid Scott Pontone's legal fees related to this case because counsel for the Pontone defendants in open court during in a proceeding in the Scott Pontone Delaware case in the Court of Chancery of the State of Delaware and Batesville in their reply to plaintiffs' response to Batesville's concise statement of material facts with respect to the parties' motions for summary judgment filed in this case admitted that Batesville paid Scott Pontone's defense costs. (ECF No. 627 at 10; ECF No. 563 ¶

---

[8]      The protective order in this case: (1) sets forth "a procedure for disclosing confidential information to the parties in this litigation;" (2) aims to "protect [the confidential information] from unauthorized use or disclosure;" and (3) "establishes a procedure for challenging confidentiality designations." (ECF No. 69 at 2.) This court, mindful of the parties' agreement set forth in the protective order, has been lenient about granting motions to seal with respect to documents the parties designated as "confidential" or "attorneys' eyes only." Whether a document should be filed under seal with this court, however, is not solely governed by the protective order; rather, a document should—and from this point on will <u>only</u>—be permitted to be filed under seal if upon consideration of the parties' submissions the court determines that under the applicable legal standards sealing is warranted. <u>See</u> <u>Publicker Industries v. Cohen</u>, 733F.2d 1059, 1071 (3d Cir. 1984); <u>Pansy v. Borough of Stroudsburg</u>, 23 F.3d 772, 787-91 (3d Cir. 1994); Civ. Action No. 10-1609 ECF No. 239 adopted by the court at ECF No. 257.

There is a proliferation in the courts of litigants seeking to file documents under seal despite the First Amendment to the United States Constitution embracing a right of public access to civil trials. <u>Publicker</u>, 733 F.2d at 1070. The parties should not burden the court with motions to seal based only upon reliance on the protective order and should file motions to seal only if after consideration of the applicable legal standards, they determine in good faith sealing is warranted. The court will not after the entry of this opinion and accompanying order routinely grant motions to seal solely based upon the parties' designation of information as "confidential" or "attorneys' eyes only."

62.) Based upon the transcript of the proceeding in Delaware, plaintiffs are correct that counsel for the Pontone defendants admitted in open court that Batesville paid Scott Pontone's legal fees related to this case. (ECF No. 612-1 at 3 (Counsel for the Pontone defendants stated in open court: "I can represent to the Court, this is a matter of public record, without breaching the other client's confidentiality that Batesville Casket has provided defense costs to my client.").) Plaintiffs are also correct that Batesville in their reply to plaintiffs' response to Batesville's concise statement of material facts with respect to the parties' motions for summary judgment filed in this case admitted that Batesville paid Scott Pontone's defense costs. (ECF No. 563 ¶ 62 (Batesville admitted that it "has and continues to reimburse Scott Pontone and [Pontone Casket] for at least part of the legal fees they incur in connection with this action.").)

The protective order protects "confidential and proprietary business information of the parties," which includes "company information *not known to the general public*." (ECF No. 69 ¶ 3 (emphasis added).) Pursuant to the protective order, Protected Material "*available* to the general public" may be used other than in connection with the above-captioned litigation. (ECF No. 69 ¶ 2 (emphasis added).) Here, information that Batesville paid Scott Pontone's legal fees related to this case became "available to the general public" when counsel for the Pontone defendants admitted that Batesville paid Scott Pontone's legal fees related to this case on the record in open court in the Scott Pontone Delaware case and Batesville in a submission in this case admitted that "Batesville has and continues to reimburse Scott Pontone and PCC for at least part of the legal fees they incur in connection with this action." (ECF No. 563 ¶ 62.) Accordingly, plaintiffs' reference to Batesville paying Scott Pontone's legal fees related to this case in their submissions to this court does not constitute a violation of the protective order. The Pontone defendants' motion for contempt and motion to seal will, therefore, be denied in part

with respect to plaintiffs' references to Batesville paying Scott Pontone's legal fees related to this case.

### c. The customer lists attached to the consulting agreement list all funeral homes in the New York Metropolitan region.

Plaintiffs do not dispute that (1) a valid order of the court existed, i.e., the protective order; and (2) they had knowledge of the protective order. Plaintiffs argue, however, that they did not violate the protective order because the content of the customer lists attached to the consulting agreement "merely consist of all of the funeral homes in the New York Metropolitan region." (ECF No. 627 at 9.) The Pontone defendants' motion for contempt with respect to plaintiffs disclosing the consulting agreement, including the customer lists attached to the consulting agreement, to Rostocki and Cordrey and the use of consulting agreement in the Scott Pontone Delaware case is discussed above. With respect to plaintiffs detailing the contents of the customer lists in their response in opposition to the motion for contempt filed with this court, the Pontone defendants joined by Batesville showed by clear and convincing evidence that that action constitutes a violation of the protective order.

Plaintiffs' argument that the customer lists are not confidential because they "merely consist of all of the funeral homes in the New York Metropolitan region" lacks merit. (ECF No. 627 at 9.) The consulting agreement and attached customer lists were designated Protected Material in this case. Pursuant to the protective order, the parties agreed to protect the confidentiality of those documents. First, to the extent plaintiffs argue the content of the customer lists are not confidential, the protective order provides a procedure for the parties to challenge designation of information as "Confidential" or "Attorneys' Eyes Only." (ECF No. 69 ¶ 8.)[9] Second, contrary to plaintiffs' argument, the customer lists containing all funeral homes in

---

[9] Paragraph eight of the protective order provides:

the New York Metropolitan region—as opposed to not containing all funeral homes in the region—does not automatically render the list non-confidential; indeed, there is no evidence that the general public knew which funeral homes were listed in the customer lists attached to the consulting agreement until plaintiffs disclosed the information in its response in opposition to the Pontone defendants' motion to compel. Under those circumstances, plaintiffs violated the protective order when they disclosed the content of the customer lists attached to the consulting agreement in their response in opposition to the Pontone defendants' motion to compel. Accordingly, the Pontone defendants' motion to seal the response in opposition will be granted and any reference to the content of the customer lists in plaintiffs' response in opposition to the motion for contempt should be redacted. Appropriate sanctions to be imposed upon plaintiffs as a result of their disclosure of the content of the customer lists will be discussed below.

### d. Reference to a loan agreement between Scott Pontone and Batesville dated April 7, 2013.

The Pontone defendants joined by Batesville allege plaintiffs violated confidentiality provisions related to the Scott Pontone Delaware case by reference to the loan agreement entered into between Scott Pontone and Batesville dated April 7, 2013. In light of the Pontone defendants' assertions of confidentiality with respect to the loan agreement, the court will grant the Pontone defendants' motion to seal with respect to the loan agreement. The Pontone defendants' motion for contempt will be denied with respect to the loan agreement, however,

---

A party challenging a confidentiality designation must request in writing that the designation be changed. The writing shall set forth the receiving party's basis for the challenge. The parties shall then meet and confer within 10 days of service of the written challenge in a good faith effort to resolve the challenge. If the parties are unable to resolve the challenge through the meet and confer, the challenging party may, within 10 days of the meet and confer, proceed to move the Court to resolve the dispute. Until the Court rules on the challenge, all parties shall continue to afford the material in question the level of protection to which it would be entitled under the challenged designation.

(ECF No. 69 ¶ 8.)

because the confidentiality provisions allegedly applicable to the loan agreement are part of the Scott Pontone Delaware case and not before this court.

### 2. Sanctions

The court must "fashion a sanction that will achieve full remedial relief." <u>John T.</u>, 318 F.3d at 554. "Sanctions for civil contempt serve two purposes: 'to coerce the defendant into compliance with the court's order and to compensate for losses sustained by the disobedience.'" <u>Robin Woods</u>, 28 F.3d at 400 (quoting <u>McDonald's Corp. v. Victory Inv.</u>, 727 F.2d 82, 87 (3d Cir. 1984)). "Compensatory sanctions…must not exceed the actual loss suffered by the party that was wronged." <u>Elkin v. Fauver</u>, 969 F.2d 48, 52 (3d Cir. 1992). Here, the Pontone defendants in their motion for contempt, which was joined by Batesville, argue: "Deterrence is required in this case as Plaintiffs show no signs of curing their violations of the Protective Order." (ECF No. 619 at 10.) The Pontone defendants joined by Batesville request, among other things, an order "directing Plaintiffs to take all steps necessary to cure their violations…and for such other relief as the Court may deem to be just and proper after the full scope of Plaintiffs' and Reed Smith's violations are ascertained." (<u>Id.</u>)

As discussed above, attorneys' fees may be awarded against a party that is held in contempt; indeed, "'the cost of bringing the violation to the attention of the court is part of the damages suffered by the prevailing party and those costs would reduce any benefits gained by the prevailing party from the court's violated order.'" <u>Robin Woods</u>, 28 F.3d 396 at 400 (quoting <u>Cook</u>, 559 F.2d at 272). Plaintiffs are, therefore, ordered to pay the Pontone defendants' attorneys' fees incurred in bringing to the attention of the court plaintiffs' violations of the protective order. Plaintiffs' obligation to pay is limited to the Pontone defendants' *reasonable* attorneys' fees incurred preparing the motion for contempt (ECF No. 619), amended motion to expedite discovery (ECF No. 614), first motion to seal (ECF No. 611), second motion to seal

(ECF No. 628), reply brief with respect to the motion for contempt (ECF No. 626), reply brief with respect to the amended motion to expedite discovery (ECF No. 638), and reply brief with respect to the first motion to seal (ECF No. 618.) Because Batesville joined in the Pontone defendants' motions for contempt and seal, plaintiffs must pay Batesville's *reasonable* attorneys' fees incurred in preparing the motions for joinder. (ECF Nos. 621, 623.) These sanctions, i.e., requiring plaintiffs to pay the Pontone defendants' and Batesville's reasonable attorneys' fees, are compensatory and do not exceed the actual loss suffered by the Pontone defendants or Batesville.

The Pontone defendants requested expedited discovery relating to the extent of plaintiffs' violation of the protective order. (ECF Nos. 614, 619.) As an additional sanction, within fourteen days of the entry of this opinion and accompanying order, each counsel of record for plaintiffs in this case currently associated with Reed Smith must submit an affidavit addressing: (1) which documents designated as Protective Material were disclosed for purposes unrelated to this case; (2) to whom the documents designated as Protective Material were disclosed for purposes unrelated to this case; (3) when the documents designated as Protective Material were disclosed for purposes unrelated to this case; and (4) if they know of any other attorney at Reed Smith who disclosed documents designated as Protective Material for purposes unrelated to this case—the name of that attorney and to whom and when that attorney disclosed the documents designated as Protective Material for purposes unrelated to this case.

The issues addressed in the affidavits should be limited to disclosures unrelated to the above-captioned case. In other words, the affidavits should only address disclosures made for purposes unrelated to this case, i.e., disclosures in violation of the protective order. Based upon the imposition of this sanction, the Pontone defendants' amended motion to expedite discovery will be denied without prejudice. The Pontone defendants in good faith may renew their request

for discovery related to plaintiffs' violation of the protective order to the extent the affidavits submitted by counsel of record for plaintiffs implicate a need for additional discovery.[10] The foregoing sanction, i.e., the payment of attorneys' fees, properly compensates the Pontone defendants and Batesville for losses caused by the disobedience of plaintiffs, and requiring counsel of record for plaintiffs to submit affidavits addressing the extent of plaintiffs' violation of the protective order responds to the Pontone defendants' request for discovery.

With respect to the Pontone defendants' request that the court order plaintiffs to "cure their violation," in light of the court granting plaintiffs' motion to amend the protective order infra, the court will not order plaintiffs to withdraw the consulting agreement as an attachment to their motion to dismiss in the Scott Pontone Delaware case. Based upon the amendments to the protective order provided for in this opinion and accompanying order, requiring plaintiffs to withdraw the consulting agreement in the Scott Pontone Delaware case would make needless work and cause unnecessary expense for the parties and the Delaware court; indeed, pursuant to the amendments to the protective order provided for in this opinion, plaintiffs may prospectively use the consulting agreement in the Scott Pontone Delaware case without violating the protective order.

Based upon the foregoing analysis, the Pontone defendants' motion for contempt will be granted in part with respect to the consulting agreement and denied in all other respects. Plaintiffs will be found in contempt of the protective order, and appropriate sanctions will be ordered.

### V. <u>Motion to Amend the Protective Order</u>

Plaintiffs request paragraph nine of the protective order be amended as follows:

---

[10] The court will not, however, permit a fishing expedition with respect to these or any other issues. The parties are reminded that discovery in this aged case has ended, and this matter is scheduled for trial. Unreasonable delay of this case by any party will not be tolerated.

> 9. Protected Material shall not be exhibited, disseminated, copied, or in any way communicated to anyone for any purpose whatsoever, other than in conjunction with the above-captioned litigation and the actions entitled *Harry Pontone v. Milso Industries Corp. and The York Group, Inc.*, Civil Action No. 7615-VCP and *Scott Pontone v. Milso Industries Corp. and The York Group, Inc.*, Civil Action No. 8842-VCP, both presently pending in the Court of Chancery of the State of Delaware. Except as provided for in this Stipulated Protective Order, the parties shall keep all Protected Material from all persons except as provided for by the terms of [the] Stipulated Protective Order.

(ECF No. 609 at 7.) The Pontone defendants do not object to an amendment of the protective order, but they do not agree with the limited nature of amendment proposed by plaintiffs; rather, the Pontone defendants argue that paragraphs two and nine of the protective order should be amended to read as follows:

> 2. This Stipulated Protective Order shall govern the disclosure and use of "Confidential" information and documents and "Attorneys Eyes Only" information and documents, as defined in paragraph 5, produced in connection with this litigation (collectively, "Protected Material"). All information which is – or has been – produced or discovered in this litigation, regardless of whether designated "Confidential" or "Attorneys' Eyes Only," **can be used** for the prosecution or defense of **any matter so long as the party involved in that matter deems the Protected Material relevant to the matter** unless the information is available to the general public without breach of the terms of this Stipulated Protective Order.
> …
> 9. Protected Material shall not be exhibited, disseminated, copied, or in any way communicated to anyone for any purpose whatsoever, other than in conjunction with **a matter in which anyone of the parties to this action deems the Protected Material relevant. Each party who uses the Protected Material for any matter shall be limited to the filing on the record of only such portions of the Protected Material that have been cited and which are relied upon by that party in his or its filings.**

(ECF No. 615 at 4.)

Batesville objects to plaintiffs' proposed amendment to the extent it permits plaintiffs to use "unspecified confidential Batesville documents produced by Batesville…in Delaware litigation to which Batesville is not a party." (ECF No. 620 at 1.)

**A. Applicable Law**

The court has the power to enter protective orders "under the inherent 'equitable powers of courts of law over their own process, to prevent abuses, oppression, and injustices.'" <u>Pansy v. Borough of Stroudsburg</u>, 23 F.3d 772, 785 (3d Cir. 1994) (quoting <u>Seattle Times Co. v. Rhinehart</u>, 467 U.S. 20, 35 (1984)). "It is well-established that a district court retains the power to modify or lift confidentiality orders that it has entered." <u>Pansy</u>, 23 F.3d at 784. "Nevertheless, simply because courts have the power to grant orders of confidentiality does not mean that such orders may be granted arbitrarily." <u>Id.</u> at 785. "The parties may later seek to modify the order as appropriate at a later stage." <u>Pearson v. Miller</u>, 211 F.3d 57, 73 (3d Cir. 2000).

### B. <u>Discussion</u>

Plaintiffs and the Pontone defendants agree that the protective order entered by the court in this case should be modified to permit the use of Protected Material in cases other than the instant case. Plaintiffs argue the protective order should be amended to allow for the use of Protected Material in this matter and two cases filed in the Delaware Chancery Court, i.e., <u>Harry Pontone v. Milso Industries Corp. and The York Group, Inc.</u>, Civil Action No. 7615-VCP and <u>Scott Pontone v. Milso Industries Corp. and The York Group, Inc.</u>, Civil Action No. 8842-VCP. (ECF No. 609 at 7.) The Pontone defendants argue for a much broader amendment, i.e., the protective order should be amended to allow for the use of Protected Material in this matter and "any matter so long as the party involved in that matter deems the Protected Material relevant to the matter." (ECF No. 615 at 4.) Batesville opposes any amendment permitting parties to this action to use its documents in connection with any litigation to which it is not a party. (ECF No. 620 at 1.)

Based upon the proposed amendments submitted by plaintiffs and the Pontone defendants and the objection raised by Batesville, the court will granted plaintiffs' motion to amend the protective order. Paragraph nine of the amended protective order shall read as follows:

> 9. Protected Material shall not be exhibited, disseminated, copied, or in any way communicated to anyone for any purpose whatsoever. Documents produced by plaintiffs and the Pontone defendants in this case, however, may be used in connection with the actions entitled *Harry Pontone v. Milso Industries Corp. and The York Group, Inc.*, Civil Action No. 7615-VCP and *Scott Pontone v. Milso Industries Corp. and The York Group, Inc.*, Civil Action No. 8842-VCP, (together, the "Delaware cases"), both presently pending in the Court of Chancery of the State of Delaware, so long as the party using the Protected Material deems the Protected Material relevant to the matter. Plaintiffs and the Pontone defendants may not, however, use documents in the Delaware cases that were produced in this case solely by Batesville without first complying with the provisions of this Stipulated Protective Order. Except as provided for in this Stipulated Protective Order, the parties shall keep all Protected Material from all persons except as provided for by the terms of the Stipulated Protective Order.

This amendment reflects, at least in part, the amendments proposed by plaintiffs *and* the Pontone defendants and the objection raised by Batesville. The amendment to the protective order is prospective and has no bearing on the resolution of the Pontone defendants' motion for contempt. In other words, amendment will not retroactively cure any breach of the protective order. The court notes, however, that it would be wasteful of judicial resources for plaintiffs to withdraw and then refile a motion or submission in the Delaware case that refers to or attaches a document which may be disclosed under this amendment.

### VI. Motion to Compel and For Costs

Plaintiffs in the response in opposition to the motion for contempt assert a cross-motion to compel and for costs.[11] (ECF No. 627 at 12.) Plaintiffs argue that in the Scott Pontone

---

[11] In plaintiffs' response in opposition to the motion for contempt, plaintiffs request their costs for responding to the Pontone defendants' motion for contempt because it is a "baseless motion." (ECF No. 627 at 12.) Because the motion for contempt is meritorious, plaintiffs' request for costs will be denied.

Delaware case, Scott Pontone attached as an exhibit to his complaint a loan agreement he entered into with Batesville on April 7, 2013 (the "loan agreement"). (Id.) Plaintiffs argue the loan agreement should have been produced by Scott Pontone and Batesville because it is responsive to a number of plaintiffs' discovery requests. (Id. at 13.)

Batesville argues in response to plaintiffs' motion to compel that: (1) "a contract that was executed more than two years after [plaintiffs] served their discovery requests" cannot be responsive to the discovery requests; (2) plaintiffs have not demonstrated why the loan agreement is relevant to the claims and defenses in this case; (3) plaintiffs did not attach a certification to their motion to compel indicating they conferred with the Pontone defendants and Batesville prior to filing the motion to compel; and (4) Batesville and the Pontone defendants do not have an obligation to supplement their discovery responses with a document that did not exist at the time the discovery responses were sent and received. (ECF No. 637 at 2-4.)

The Pontone defendants in their response in opposition to the motion to compel argue: (1) this court previously denied plaintiffs' attempt to obtain discovery with respect to the amount of Scott Pontone's attorneys' fees that are being paid by Batesville; (2) the loan agreement is not relevant to the claims or defenses raised in this case; and (3) plaintiffs did not include with their cross-motion to compel a certification that they in good faith conferred with the Pontone defendants to obtain the loan agreement without court intervention as required by Federal Rule of Civil Procedure 37(a)(1). (ECF No. 688 at 4.)

The parties' arguments will be addressed below.

A. **Applicable Law**

---

The court also notes that it was procedurally improper for plaintiffs to raise a motion in a responsive briefing. The parties shall not include requests to the court in responsive briefing; all requests to the court should be made in a proper motion filed on the court's docket.

"*Unless otherwise limited by court order*," the scope of discovery extends to all nonprivileged matter that is relevant to a claim or defense. FED. R. CIV. P. 26(b)(1). For "good cause," the court may extend discovery beyond matter which is relevant merely to claims and defenses—to "any matter relevant to the subject matter involved in the action." Id. "Relevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence." Id.

Notwithstanding the broad scope of discovery established by Rule 26(b)(1), the trial court is "vest[ed] . . . with broad discretion to tailor discovery narrowly." Crawford-El v. Britton, 523 U.S. 574, 598-99 (1998); see FED. R. CIV. P. 26(b). The court is required to limit the frequency or extent of discovery upon determining that: (1) "the discovery sought is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive;" (2) "the party seeking discovery has had ample opportunity to obtain the information by discovery in the action; or;" (3) "the burden or expense of the proposed discovery outweighs its likely benefit, considering the needs of the case, the amount in controversy, the parties' resources, the importance of the issues at stake in the action, and the importance of the discovery in resolving the issues." FED. R. CIV. P. 26(b)(2)(C). Additionally, upon motion the court may limit the time, place, and manner of discovery, or even bar discovery altogether on certain subjects, as required "to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense." FED. R. CIV. P. 26(c).

"The conduct of discovery is a matter for the discretion of the district court and its decisions will be disturbed only upon a showing of an abuse of this discretion." Wisniewski v. Johns-Manville Corp., 812 F.2d 81, 90 (3d Cir. 1987) (citing Marroquin-Manriquez v. I.N.S., 699 F.2d 129, 134 (3d Cir. 1983)). The district court abuses its discretion with regard to managing discovery, when its ruling "deprive[s] [a party] of crucial evidence, or otherwise

constitute[s] a 'gross abuse of discretion resulting in fundamental unfairness.'" Wisniewski, 812 F.2d at 90 (quoting Marroquin-Manriquez, 699 F.2d at 134).

"In order to succeed a motion to compel discovery, a party must first prove that it sought discovery from its opponent." Petrucelli v. Bohringer & Ratzinger, 46 F.3d 1298, 1310 (3d Cir. 1995). Under Federal Rule of Civil Procedure 37(a)(1), this requires certification that the movant conferred or attempted to confer with the entity objecting to discovery in good faith prior to resorting to court action.[12]

### B. Discussion

On June 18, 2014, the Pontone defendants provided the court a copy of the loan agreement for the court's in camera review. (ECF No. 695.) The subject matter of the loan agreement is the payment of Scott Pontone's legal fees related to the above-captioned case and the Scott Pontone Delaware case. (Id.)

On December 13, 2012, the court ordered plaintiffs to disclose to the Pontone defendants the amount of attorneys' fees and expenses they incurred in this case as of that date. (ECF No. 444.) On December 18, 2012, plaintiffs filed a motion for reconsideration asking the court to reconsider its decision ordering plaintiffs to disclose their attorneys' fees to the Pontone defendants or in the alternative, "require Defendants to disclose their attorneys' fees and expenses to date, including the amount of the Pontone Defendants' fees being paid by Batesville, so that the amount of Plaintiffs' attorneys' fees may be viewed in context." (ECF No. 426 at 1-2.) At a hearing on December 19, 2012, the court denied plaintiffs' motion for reconsideration

---

[12] Federal Rule of Civil Procedure 37 provides:

> **(1) In General.** On notice to other parties and all affected persons, a party may move for an order compelling disclosure or discovery. The motion must include a certification that the movant has in good faith conferred or attempted to confer with the person or party failing to make disclosure or discovery in an effort to obtain it without court action.

FED. R. CIV. P. 37(a)(1).

and their request for the Pontone defendants' attorneys' fees. (ECF No. 445 at 45.) With respect

to the request for the Pontone defendants' attorneys' fees, counsel for plaintiffs argued, among

other things:

> Now, the amount of fees and the allocation is very relevant to a number of items,
> if you're going to find anything is relevant, but, for example, the fact that
> Batesville may be paying for fees pursuant to an indemnification agreement
> would be relevant and probative of whether or not they have aided and abetted the
> Pontones' conduct and what the level of their knowledge was relative to what the
> Pontones might be doing.

(ECF No. 445 at 42.) The court denied plaintiffs' request because plaintiffs did not request the

information they sought from the Pontone defendants. (Id. at 45) ("You never asked for it. You

never moved to compel if you did ask for it.")

The loan agreement sought by plaintiffs in the motion to compel addresses the exact

subject matter plaintiffs raised with the court during the December 19, 2012, hearing, i.e.,

Batesville's payment of Scott Pontone's attorneys' fees related to this case. As the court noted at

the hearing on December 19, 2012, plaintiffs never requested that information from the Pontone

defendants during the lengthy period of fact discovery in this case. For the same reasons set forth

on the record during the December 19, 2012 hearing, plaintiffs' motion to compel will be denied.

**VII.    Conclusion**

For the reasons set forth in this opinion:

- Plaintiffs' Motion to Amend the Protective Order (ECF No. 609) will be
  GRANTED;

- Pontone defendants' First Motion to Seal (ECF No. 611) will be
  GRANTED in part;

- Pontone defendants' Motion for Contempt (ECF No. 619) will be
  GRANTED in part;

- Pontone defendants' Amended Motion to Expedite Discovery (ECF No.
  614) will be DENIED without prejudice;

- Plaintiffs' Motion to Compel and for Costs (ECF No. 627) will be DENIED; and

- Pontone defendants' Second Motion to Seal (ECF No. 628) will be GRANTED in part.

An appropriate order will be entered.

BY THE COURT,

Dated: August 1, 2014

/s/ JOY FLOWERS CONTI
Joy Flowers Conti
Chief United States District Judge
